COMMONWEALTH *vs.* JOHN DOWDICAN.

At the trial of an indictment for keeping a tenement used for the illegal sale of intoxicating liquor, a witness may be asked, " What have you seen him [the defendant] doing the past six months ? " and an answer, " Selling whiskey," is admissible evidence; he may be asked, in reference to the contents of tumblers, " What did it look like ? " and his answer, " Whiskey," is admissible; he may be asked, " What was in the tumblers ? " When he has testified that he has had a conversation with the defendant, he may be asked, " About what ? " He may be asked, in reference to the tenement, " In what condition have you seen people there ? " and an answer, " Going in sober and coming out drunk," is not objectionable; and an instruction to the jury that the burden is upon the government to show, by evidence confined to the time covered by the indictment, that the defendant kept the place, and that it was kept for the purpose of illegal sale during that time, and that the presumption is that it was kept for legal purposes, is not erroneous.

INDICTMENT for keeping a tenement May 1, 1873, and for the six months next preceding, used for the illegal sale of intoxicating liquor.

Trial in the Superior Court, before *Dewey*, J., where the defendant, being convicted, alleged exceptions, from which it appeared that one Knowles testified, on behalf of the prosecution, that he had known the defendant two years ; that he had seen him at a wooden building where there was a sign with the name of Dowdican. He was then asked by the government, " What have you seen him doing the past six months ? " This question was objected to, but admitted by the court. He answered, " I have seen him selling liquors, whiskey, to parties standing at the bar." He was then asked, " Was anything said at that time ? " This question was objected to, but was admitted. He further testified to seeing liquid which was of a slight reddish color, in a tumbler on the counter. He was asked, " What did it look like ? " This was objected to, but admitted, and he answered, " Whiskey." He further testified, that at one time he saw parties in a stall with tumblers before them. He was asked, " What was in the tumblers ? " This question was objected to, but admitted. He was then asked whether he had, within six months, had any conversation with the defendant. He said he had. He was asked, " About what ? " This was objected to, but admitted, and he answered, " I asked Dowdican if he kept this place, and he said

that he did." He was asked, " Have you seen intoxicated per
sons in the saloon within six months ? " This was objected to
and withdrawn ; and he was asked, " In what condition have you
seen people there ? " The question was admitted, and he an-
swered, " I have seen people going in sober and coming out
drunk."

One Sleeper, who testified in behalf of the government that he
had seen sales on the premises, also testified that he had been a
witness for the defendant on a trial for keeping the place before
the time named in this indictment, and that he then testified
that he had, during the time covered by that complaint, been in
the place, and had seen no sale of liquors.

Other evidence was set forth in the exceptions, and among
various requests for instructions the defendant asked the court to
instruct: " If the jury are satisfied, upon the testimony of Mr.
Sleeper, that during the six months prior to November 1, 1872,
this was not a liquor nuisance, the burden is upon the government
to show that at a subsequent date that innocent character was
changed, and that it became a liquor nuisance."

The court refused to give this instruction, but instructed the
jury as follows :

" The burden of proof is on the government to show that the
defendant kept the place, and that the purposes for which it was
kept were illegal keeping, and illegal sales, during the six months
covered by the indictment, by evidence confined to those six
months, and there is no presumption from evidence as to other
times that the place was thus kept for illegal purposes, but the
presumption is it was kept for legal purposes during the time in-
cluded in the indictment."

*G. W. Searle,* for the defendant.

*C. R. Train,* Attorney General, for the Commonwealth.

By the Court. 1. The testimony of the witness Knowles
was competent.

2. The instructions given were apt and sufficient, and adopted
in substance the defendant's prayer.

3. The other questions raised are decided in *Commonwealth* v.
*Owens, ante,* 252.                         *Exceptions overruled.*