Overshiner *v.* State.

## OVERSHINER *v.* THE STATE.

[No. 19,547.   Filed February 15, 1901.]

156  187|
157  523|

CONSTITUTIONAL LAW.—*Statutes.*—Courts will not search the Constitution for express sanction, nor for reasonable implication, to sustain a legislative enactment, but the successful assailant must be able to point out the particular provision that has been violated and the ground upon which it has been infringed.   *p. 188.*

DENTISTRY.—*Appointment of Examining Boards.—Constitutional Law.*—The act of March 6, 1899 (Acts 1899 p. 479), is not unconstitutional because of the provision therein conferring upon the state dental association the power to appoint three members of the board of dental examiners.   *pp. 189-194.*

From the Grant Circuit Court.   *Affirmed.*

*J. A. Kersey* and *A. E. Steele,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for State.

HADLEY, J.—Appellant was convicted of practicing dentistry without a license, or certificate of registration, in violation of the provisions of the act of 1899 approved March 6, 1899 (Acts 1899, p. 479). The section involved is in these words: "§2. A board of examiners consisting of five reputable practicing dentists shall be appointed on or before the last Tuesday of June, 1899, and biennially thereafter, one by the Governor, one by the state board of health, and three by the Indiana state dental association, said board to serve for the term of two years from the date of such appointment. When convened said board shall examine all applications, issue certificates thereon, and also may examine all applicants for certificates of qualification and issue such certificates to all such applicants as shall pass a satisfactory examination." Appellant assails the judgment upon the ground that the statute upon which it rests is violative of §1, article 3; §1, article 5; §18, article 5, and §3, article 6 of the State Constitution and the fourteenth amendment of the federal Constitution. Appellant

admits that he practiced dentistry without the license required by the statute under which he is prosecuted and that the judgment is right if that statute is constitutional.

A statute upon the same subject and in all material respects the same as the one before us, Acts 1887, p. 58, §2, (§5596 Burns 1894) was held to be constitutional in *Wilkins* v. *State,* 113 Ind. 514. In that case the point was made against the act, that the authority to appoint three members of the board of examiners was an enlargement of the corporate powers of the state dental association, by special law, in contravention of the Constitution. Again the same statute was held to be in harmony with §23, article 1 of the Constitution forbidding the granting of privileges which shall not upon the same terms equally belong to all citizens. *Ferner* v. *State,* 151 Ind. 247. It is here asserted that the statute is bad for being in conflict with the various provisions of the Constitution above set out, the contention being that the appointment by the state dental association of three members of the board of examiners was void for want of authority in the legislature to confer the power of appointment upon a private corporation, or individual outside the executive department.

The power of the General Assembly to enact laws is subject to no restrictions save those imposed by the State and federal Constitutions. *Hovey* v. *State,* 119 Ind. 395; *Lowe* v. *Board, etc., ante,* 163. Its laws are presumed to be valid, and they are to be upheld by the courts, not only when clearly authorized, but in all cases of doubt, and until it is made clearly to appear that they contravene some constitutional provision. Courts will not, therefore, search the Constitution for express sanction, nor for reasonable implications, to sustain a legislative enactment, but the successful assailant must be able to point out the particular provision that has been violated and the ground upon which it has been unequivocally infringed. *Robinson* v. *Schenck,* 102 Ind. 307, 319; *Hedderich* v. *State,* 101 Ind. 564, 51 Am. Rep. 768; *French* v. *State,* 141 Ind. 618, 639, 29 L. R. A. 113.

We concede in fullest terms appellant's contention that our State government is composed of three distinct and coördinate branches, namely, the legislative, executive (including the administrative), and judicial, and that the powers committed by the people to one branch cannot be exercised by those performing duties in another without express authority to do so, or the exercise of such power becomes essential or appropriate to the effective discharge of the duties imposed upon such branch. And while it has been many times decided by this and other courts that, as a general rule, the power of appointment to office is an appropriate executive prerogative, yet, as said by Mitchell, J., in *Hovey* v. *State,* 119 Ind. 401, "It is a fundamental error, however, to assume that the exclusive right to exercise the power of appointment is included in the general grant of power to the executive." In the distribution of governmental power the people had the undoubted right to lodge any part of it where it pleased them, and when expressly placed the court will suffer no encroachment upon it by those acting in another department; but where the Constitution is silent and the question is one of public policy, or relates to the best means or agency for the attainment of some governmental end, it must be presumed that the framers of the Constitution intended to invest the legislative body with a large discretion in the selection of the agencies most suitable and beneficial to the public.

In *People* v. *Hurlburt,* 24 Mich. 44, 93, Cooley, J., says: "The legislature, in prescribing new rules, have necessarily a large discretion as to whether the agencies for putting them in force shall be named by themselves, or left to the selection of the executive."

That eminent expounder of constitutional law, Chief Justice Marshall, in *McCulloch* v. *Maryland,* 4 Wheat. 316, on page 421, says, with respect to the federal Constitution: "We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be tran-

scended. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." Relating to the same subject the celebrated author and jurist already quoted cites approvingly: "Where the Constitution contains no negative words to limit the legislative authority in this regard, the legislature in enacting a law must decide for itself what are the suitable, convenient, or necessary agencies for its execution." Cooley Const. Lim. (6th ed.), p. 134, note.

The Constitution is silent upon the subject of general appointments to office. It is provided by §1, article 5, that "the executive powers of the State shall be vested in a Governor" and by section 18, article 5, "when, at any time, a vacancy shall have occurred in any other state office, [except appointment vested in the General Assembly] or in the office of judge of any court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified" and by §1 article 15 that, "All officers whose appointments are not otherwise provided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law."

Three things are clearly apparent from these provisions: (1) The power of appointment to some offices is committed to the General Assembly; (2) the power to make temporary appointments to fill vacancies in any state office, or in the office of judge, until such officer can be regularly chosen

as provided by law, and thus, to avoid a suspension of the functions of such office, is conferred upon the Governor, and (3) all other officers whose appointments are not specially provided for in the Constitution shall be chosen in such manner as the legislature may deem expedient. It can not be contended that the appointment to the office of state dental examiner is fixed by the Constitution, for no such office was in existence when the Constitution was adopted. The appointments to that office, therefore, come within the purview of §1, article 15, and shall be made in such manner as may be hereafter prescribed by law. The manner prescribed by law is that the state board of dental examiners shall consist of five members, one to be appointed by the Governor, one by the board of health, and three by the state dental association.

It is claimed that the statute must fail for the reason that the legislature has no constitutional warrant for bestowing its police power upon a private corporation to be by it exercised upon the citizens of the State. We perceive no reason why a corporation, such as the one complained of, may not prove itself a repository of power, as safe and salutary as an individual. The corporation is composed of practicing dentists, organized for the promotion of scientific knowledge and skill in the practice of the profession of dentistry, and which association thus stands in an intimate and well informed relation to the subject, and possessed of a peculiar interest in the successful administration of the law. It is difficult to conceive of an appointing power with higher qualifications, or likely to be swayed by more laudable motives, and that it is an organization of persons mutually interested in the enforcement and proper administration of the law surely furnishes no reason for its condemnation.

Chief Justice Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316, further adds "that a corporation must be considered as a means not less usual, not of higher dignity, not

more requiring a particular specification than other means, has been sufficiently proved.   *   *   *   We find no reason to suppose that a constitution, omitting, and wisely omitting, to enumerate all the means for carrying into execution the great powers vested in government, ought to have specified this.   *   *   *   But being considered merely as a means, to be employed only for the purpose of carrying into execution the given powers, there could be no motive for particularly mentioning it."

In the case known as the *Slaughter-House Cases,* 16 Wall. 36, the legislature of Louisiana had granted a corporation the exclusive right for twenty-five years to maintain slaughter-houses, landings for cattle, and cattle yards, within certain parishes of the state, including the city of New Orleans, requiring all animals offered for sale or slaughtered to be brought to the yards of the corporation, authorizing the corporation to charge fees, and prohibiting all other persons from maintaining such places within said territory. In holding that the legislature had constitutional authority within its police powers to confer these public duties upon the corporation, the court, by Justice Miller, uses this language: "It can not be denied that the statute under consideration is aptly framed to remove from the more densely populated part of the city the noxious slaughter-houses, and large and offensive collections of animals necessarily incident to the slaughtering business of a large city, and to locate them where the convenience, health, and comfort of the people require they shall be located. And it must be conceded that the means adopted by the act for this purpose are appropriate, are stringent, and effectual. But it is said that in creating a corporation for this purpose, and conferring upon it exclusive privileges—privileges which it is said constitute a monopoly—the legislature has exceeded its power. If this statute had imposed on the city of New Orleans precisely the same duties, accompanied by the same privileges, which it has on the corporation which it created

it is believed that no question would have been raised as to its constitutionality.  In that case the effect on the butchers in pursuit of their occupation and on the public would have been the same as it is now.  Why can not the legislature confer the same powers on another corporation, created for a lawful and useful public object, that it can on the municipal corporation already existing?  That wherever a legislature has the right to accomplish a certain result, and that result is best attained by means of a corporation, it has the right to create such a corporation, and to endow it with the powers necessary to effect the desired and lawful purpose, seems hardly to admit of debate."  See, also, *Louisville Gas Co.* v. *Citizens Gas Co.*, 115 U. S. 683, 6 Sup. Ct. 265, 29 L. Ed. 510; *Commonwealth* v. *Vrooman*, 164 Pa. St. 306, 30 Atl. 217, 25 L. R. A. 250.

For many years state officers, or officers performing state functions, have been chosen by private corporations under legislative authority, without question.  Some of these are, three members of the board of trustees of Purdue University, two by the state board of agriculture, and one by the state board of horticulture (Acts 1875, p. 120, §6176 Burns 1894) ; grain inspector by the board of trade or other commercial bodies of the county (Acts 1875, p. 172, §8718 Burns 1894) ; sextons of churches, and officers of fairs, who *ex officio* are made by law peace officers (Acts 1881, p. 174, §2074 Burns 1894) ; the state chemist by Purdue University Board (Acts 1881, p. 511, §6618 Burns 1894) ; the state live stock sanitary commission by the state board of agriculture (Acts 1889, p. 380, §2871 Burns 1894) ; the superintendents of schools of three of the largest cities of the State, with the Governor and presidents of the higher state schools, shall contsitute the state board of education with power to grant state certificates of qualification to teachers.  Acts 1875, p. 130, §5849 Burns 1894.

We hold, therefore, that the General Assembly in con-

ferring upon the state dental association power to appoint three members of the state board of dental examiners did not transcend its constitutional power, and that appointments to said board of examiners by said association are valid. Judgment affirmed.