## Sibert, et al. v. Garrett, et al.

(Decided December 15, 1922.)

## Appeal from Franklin Circuit Court.

1. Constitutional Law—Invasion By Legislature of Powers of Executive—Election by Legislature.—Under the provisions of sections 27 and 28 of our Constitution neither the legislative, the executive or ministerial, or the judicial departments may exercise governmental functions properly belonging to either of the others unless otherwise provided in the Constitution.

2. Constitutional Law—Exercise of Power in Election of Officers.—Primarily the election or selection of officers rests with the people composing the government, but they may designate in an adopted Constitution the agency or agencies which may exercise the power, although it intrinsically may be one belonging to the executive department.

3. Constitutional Law—Power of Legislature in Election of Officers.—The only power conferred upon the legislature concerning the election and appointment of officers is found in section 93 relative to statutory state officers, and in section 107 relative to the same character of district and county officers, except section 249 which empowers the legislature to elect its own officers constituting a part of the legislative force necessary to the conducting of a session of the legislature and that body may itself elect the officers mentioned in the latter section; but the only power it posesses under the first two named ones is to provide or prescribe the manner or method by which such officers may be elected or appointed, which power does not include the right of the legislature to itself appoint or elect such officers or to include them in the enactment creating the office, since it is one thing to provide or prescribe the manner or method for the doing of an act, and quite another thing to perform the act under the guise of providing the manner or method.

4. Constitutional Law—Appointment of Officers—Executive Function.—While the appointment or selection of an officer may be classed as an executive function, yet it is competent to bestow by constitutional provision the power on either of the three departments of state and even without such bestowal each department would no doubt possess the power to appoint officers whose duties are connected with or appertain to that particular department.

5. Constitutional Law—Creation of State Highway Commission—Election By Legislature.—The legislature in 1922 passed an act amending and re-enacting the existing law with reference to the State Road Department, and in it there was created a State Highway Commission consisting of four members, the first ones of whom were named in the act, and it was provided that their successors should be elected by the legislature: Held, that the legislature had no right to so designate or to itself elect such state officers and the act for that reason is invalid.

6. Constitutional Law—Appropriations.—An appropriation of money is made, within the contemplation of section 46 of our Constitution, upon the creation of an office and attaching thereto a designated salary and appropriating funds for its payment and a statute so enacted must receive a majority of the members elected to each house of the general assembly in order to become a law; but where an appropriation has already been made by some prior act for the defraying of such expenses, it is not an appropriation to apply a part of the previously appropriated fund to the payment of a particular designated salary, since the legislature thereby only distributes the already appropriated fund without making a new appropriation.

7. Statutes—Signing Enrolled Bill or Withholding Signature by Presiding Officer.—It is not within the province of the presiding officer of either house of the general assembly to withhold his signature to an enrolled bill upon the ground that its subject matter is unconstitutional; but if some prescribed formality for the enactment of laws has not been complied with, the withholding of the signature would be justified. Therefore, when a presiding officer of either house writes at the foot of the enrolled bill his reasons for not signing it and then signs his name to such reasons the bill would be considered as signed by him if the reasons given are unfounded or insufficient.

ALEX. P. HUMPHREY, W. A. PERRY and ROBT. C. SIMMONS for appellants.

CHAS. I. DAWSON, Attorney General, and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action involves the constitutionality of an act attempted to be passed at the 1922 session of the General Assembly of Kentucky, commonly known as the "Simmons Road Bill," and which is printed beginning on page 459 in the published Acts of that session as an "Appendix." It is entitled "An act to amend an act relating to roads and bridges," etc., and it repeals in part and amends chapter 17 of the Acts of 1920, page 76. The latter act created a commission composed of four members to be known as the "State Highway Commission" and it, by the terms of the act, was authorized to administer and perform all the duties belonging to the Department of Public Roads in and for the Commonwealth. The members of the commission in that act were appointed by the Governor, and its duties and the tenure of office of the members are set out in the act and which are not necessary to repeat here. The 1922 act,

involved in this litigation, amended in various respects the 1920 act, two of which were that the first members of the commission were selected by the act itself and thereafter it was provided that the members should be elected by the legislature, and salaries were attached to the positions, whereas there were none in the 1920 act.

The constitutionality of the 1922 act is assailed on a number of urged grounds, but only three of which do we consider of sufficient materiality to deserve our consideration, and they are: (1), that the legislature possessed no constitutional right to name in the bill the first members of the commission, or to elect their successors thereafter; (2), because the act carried with it an appropriation of money for the payment of the designated salaries of the members of the commission and it received but nineteen votes in the Senate whereas an appropriation bill, under the provisions of section 46 of the Constitution, must receive a majority "of all the members elected to each house," and the nineteen votes which the act received in the Senate was not a majority of that body, and (3), that the Lieutenant-Governor did not sign or affix his signature to the enrolled bill within the contemplation of section 56 of the Constitution. This action to test the validity of the act was filed by some of the designated members in it against others who declined to join as plaintiffs, and against the members of the commission under the 1920 act. Defendants set up in their answer the various grounds relied on as rendering the act unconstitutional, to which a demurrer was filed which was overruled and plaintiffs declining to plead further the act was adjudged unconstitutional, and the petition was dismissed, whereupon plaintiffs prosecute this appeal.

Ground (1) urged against the validity of the statute, it is claimed by defendants, finds support in the provisions of sections 27 and 28 of our Constitution, the first of which says: "The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to-wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another;" while the language of the next one is: "No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or

permitted.'' It is insisted that the filling of an office, or the selection or designation of the person clothed with official functions, is essentially an executive duty and properly belongs to the executive department, and that by the terms of the above sections of the Constitution the legislature is forbidden to exercise it; but if not strictly so, that the officer should be appointed by that department with which his duties are allied and closely connected, and that in either event it was incompetent for the legislature to name in the act, or to subsequently elect, the members of the State Highway Commission created thereby whose duties are strictly and essentially executive or administrative, the latter of which is a part of and belongs to the executive department.

Able briefs are filed by counsel for both sides exhibiting a most exhaustive research of the decisions involving the question and of the statements by law writers upon the subject, many of which are cited and relied on by respective counsel as supporting their divergent views; and in some instances counsel rely upon the same case or cases or upon the same text book authority, because of different constructions each of them places thereon. Counsel for appellants include the following as supporting their contention, viz.: Little v. Willimon, 103 S. C. 50; Hovey v. State, 119 Ind. 395; Fox v. McDonald, 151 Ala. 51, 46 Am. St. Rep. 98, 21 L. R. A. 529; Richardson v. Young, 122 Tenn. 471; Cox v. State, 72 Ark. 94, 105 Am. St. Rep. 17; Biggs v. McBride, 17 Ore. 640, L. R. A. 115; State v. George, 22 Ore. 142, 29 Am. St. Rep. 586, 15 L. R. A. 737; People v. Freeman, 80 Cal. 233, 13 Am. St. Rep. 122; Dunbar v. Cronin (Arizona), 164 Pac. Rep. 447; 12 Corpus Juris 836, 22 R. C. L. 426; McArthur v. Nelson, 81 Ky. 67; Sinking Fund Commissioners v. George, 104 Ky. 260; and the three closely following cases of Purnell v. Mann, 105 Ky. 87; Poyntz v. Shackelford, 107 Ky. 546, and Sweeney v. Coulter, 109 Ky. 295; while appellees' counsel rely upon the cases of State v. Washburn, 167 Mo. 691, 90 Am. St. Rep. 430; State, ex rel. v. St. Louis, 216 Mo. 94; Same v. Gordon, 236 Mo. 166; State v. Denny, 118 Ind. 457; Same v. Hyde, 121 Ind. 20; Same v. Peele, idem 496; State v. Gorby, 122 Ind. 17; People v. Bledsoe, 68 N. C. 460; Stockman v. Leddy, 55 Col. 25; Norwalk St. Ry. Company's appeal, 69 Conn. 576, 39 L. R. A. 794; State v. Barker, 116 Iowa 96, 93 Am. St. Rep. 223; State, ex rel. v. Kennon, 7 Ohio 546; Robey v. Prince George's County,

92 Md. 151; State v. Brill, 100 Minn. 499; Curtis v. Cornich, 109 Maine 384; Kilburn v. Thompson, 103 U. S. 168; Supervisors of Election, 114 Mass. 257; Meachem on Public Officers, section 107; 22 R. C. L. 424, and the domestic cases of Taylor v. Commonwealth, 3 J. J. Mar. 401, and Pratt v. Breckenridge, 112 Ky. 1.

To notice in detail all of the cases relied on by both sides, or to discuss the grounds upon which the court in each of them rested its opinion and to point out the distinguishing features between many of them would expand this opinion to the dimensions of an ordinary sized law book, which we do not regard as necessary to a statement of our position and the reasons therefor, even if the crowded time of this court did not warn against it.

Perhaps no state forming a part of the national government of the United States has a constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government, than does our Constitution, which history tells us came from the pen of the great declaimer of American independence, Thomas Jefferson, when delegates from Kentucky, just after it was admitted to the Union, waited upon him and he penned for them the substance of what is now section 28, *supra,* of our Constitution, containing an affirmative prohibition against one department exercising powers properly belonging to the others and which without it contained only the negative prohibition found in section 27 of that instrument and which was the extent of the separation of the powers found in the federal Constitution and in those of a number of the states composing the confederated union at that time. Following the adoption of our first Constitution, other incoming states, either in their first constitutions or in subsequent ones, copied, either literally or in substance, the two sections of our Constitution and the courts of some of them have announced divergent views as to the proper construction of the two sections, and in nearly every instance the opinion was made to turn upon the existence of some fact or facts extraneous to their language, notably among which were other provisions of the Constitution containing them, and which were made to apply to the particular facts under consideration and thereby furnished the reason for the particular conclusion reached; while another instance was that the appointment to the particular office involved, in the manner then being tested, had been exercised in that manner under a prior

Constitution containing the same clauses as the subsequent one, and it was held that such contemporaneous construction of the prior Constitution was adopted as part of the subsequently framed one. In addition to those reasons for the apparent conflicts in the opinions there must also be mentioned the ever existing one of different courts arriving at different conclusions under the exact, or similar states of fact, which condition of the law is familiar to all practitioners. It would be but little trouble to point out instances since the formation of the United States wherein the court of only one state took a position diametrically opposed to all the others upon the same state of facts and later that position was adopted by a majority of the courts, a notable illustration of which is when the court held in the case of Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340, that a citizen might sue a local public utilities company to recover special damages for the violation of its local franchise contract made with the municipality in which it was operated. At that time every court in all the states of the union, as well as in Canada and England, denied any such right to the citizen and taxpayer; but that opinion was followed shortly by one of the North Carolina Supreme Court, and now a substantial number of the courts of last resort have adopted the principle.

It is insisted by counsel for appellants that the legislature under the constitutions of the respective states, unlike Congress under the Federal Constitution, has all the power not withheld from it by the Constitution of the state, which as a general proposition is true as will be seen from 12 Corpus Juris 745, and which contains a repetition of what all other writers on the subject as well as the courts say. But a deeper probing into and investigation of the subject will reveal the truth that the rule so generally stated means, not that the legislature has "all powers" not withheld by the Constitution, but that it "may pass any acts that are not expressly or by necessary implication inhibited by their own constitutions or by the Federal Constitution." In other words, the legislature may perform all *legislative* acts not expressly or by necessary implication withheld from it, but it may not perform or undertake to perform executive or judicial acts, except in such instances as may be expressly or by necessary implication directed or permitted by the constitution of the particular state. To adopt the lati-

tudinous construction that the legislature may do anything not expressly or impliedly prohibited by the Constitution would, to our minds, at once destroy the separation of the powers of government into the three great departments.

In an early day this court, in an opinion written by one of the greatest lawyers who ever occupied a seat on the Court of Appeals (Chief Justice Robertson), in the case of Taylor v. Commonwealth, 3 J. J. Mar. 401, said that ''Appointment to office is intrinsically EXECUTIVE,'' but that even so, it might be performed by a judicial officer when the duties of the office appertain strictly to the court, which was a clerk in that case. To the same effect are the Washburn, State v. St. Louis, and State v. Gordon cases, *supra,* as well as the Denny, the Bledsoe, the Stockman, the Kennon, the Brill, the Curtis cases, and perhaps others relied on by counsel for appellees, including the text in 22 R. C. L. 424, wherein it is said: ''The appointment of officers is intrinsically an administrative or executive act, but this does not imply that no appointment can be made by any department of government other than the executive, for all the authorities agree that the courts and the legislature may appoint those public officers which are *necessary* to the exercise of *their own functions.*'' (Italics ours.)

Some of the cases cited and relied on by learned counsel for appellants contain statements indicating a contrary view, but a critical examination of them will show that the peculiar facts of those cases, some of which we have hereinbefore recited, entered into the shaping of the courts' opinions. But, however that may be, we do not regard an exact, or correct classification of the act of appointment to office as essential to the decision of the question in this case for reasons hereinafter to be noticed.

It can not fail to be observed that the reasons underlying the separation of our republican form of government into the three branches was to prevent one of the departments from absorbing and appropriating unto itself the functions of either of the others. The purpose was to have each of them to so operate in their respective spheres as to create checks to the operations of the others and to prevent the formation by one department of an oligarchy through the absorption of powers belonging to the others; the evil effects from such concentration of power were outstanding in the pages of past history

the instances of which we need not stop to enumerate. It was to prevent such evil effects and a possible eventual revolution, and to preserve and forever perpetuate, if possible, the constitutional form of government, that sections 27 and 28 and similar ones were adopted, and we conceive it to be the duty of the courts to adopt the construction most conducive to such perpetuation rather than one which would be a possible door for the destruction of the edifice as contemplated; and especially so, when the language involved and to be construed is plainly susceptible to such a construction. In doing so we are aware of the universally applied and often reiterated admonition that it is the duty of the courts to declare an act constitutional and within the power of the legislature to enact rather than otherwise; but such admonition does not destroy the power of the courts to pronounce an act unconstitutional when its enactment is either expressly, or by necessary implication, inhibited and subversive of the purposes and intention of the makers of the particular Constitution under consideration. In the light of these observations we will now approach a determination of the question under consideration.

To begin with, the latest utterance of this court in the Pratt-Breckinridge case, *supra,* holds that under no provisions of our present Constitution is it competent for the legislature to itself elect, designate or appoint officers whose duties are of the nature and character attempted to be conferred on appellants in this case. But it is said that the opinion in that case was what might be termed a political one, and which in a sense may be accepted as true, and that its reasoning should not be followed on that account but rather should the doctrine of Sinking Fund Commissioners v. George, *supra,* and the other named cases immediately following it, be applied in this case. Answering that contention it might be conceded that there would be much force in it if the George opinion and those following it were supported by reasoning as sound or sounder than is found in the Pratt-Breckinridge opinion, which, however, we are not prepared to admit. Without incorporating excerpts from the latter opinion we are convinced, beyond doubt, that its reasoning is far more convincing than that contained in its short lived predecessors and, according to our view, is practically unanswerable. Besides, the doctrine of *stare decisis* has not lost its place in the law, and as said, in substance, in the case of Kentland Coal

and Coke Co. v. Keene, 168 Ky. 836, it is entitled to great weight and is adhered to by most courts, unless the principle established by the prior decisions is clearly erroneous, "But the rule should not be departed from except on the fullest conviction that such an error has been committed." As intimated, we are by no means convinced that such an error was committed in the rendition of the Pratt-Breckenridge opinion which has stood unchallenged for more than twenty years, and for that reason, plus its sound and, as we conceive it, almost unanswerable reasoning, we would hesitate to overrule it at this late day unless we were more thoroughly convinced of its unsoundness. At the time the George opinion was rendered the penitentiaries were under the management of a board elected by the legislature as provided by chapter 4, Session Acts 1898, and the opinion in that case upheld the validity of that act. The Pratt-Breckinridge opinion was rendered on November 20, 1901, at a time when the penitentiary commissioners elected by the legislature under the 1898 act were still in office and they were, without testing the question, continued to be so elected until 1906 when the legislature enacted chapter 18 of the published Session Acts for that year which repealed the 1898 act and provided for the appointment of the members of the board of control by the Governor. From that time forward the doctrine of the Pratt-Breckinridge case has been scrupulously followed by the legislature in not assuming to elect officers, except those whose duties pertain to its own sessions and, except that of Librarian, the grounds for which are fully set out in the Pratt-Breckinridge opinion, as well as many of the foreign cases, *supra,* notably the late Arizona case of Dunbar v. Cronin.

Primarily, the power of selecting public officers rests with the people they serve, but they may confide it in the Constitution they adopt, either expressly or by necessary implication, to whatever department of the government they see proper, and the question at last becomes one of the correct interpretation of the particular Constitution involved. Without naming them, and for the sake of brevity, it is sufficient to say that our Constitution creates certain named state officers, and certain designated district and county officers and provides how they shall be filled by election, or by appointment in case of a vacancy, and in the latter part of section 93 relating to legislatively created state officers it is said: "In-

ferior state officers, not specifically provided for in this Constitution, may be appointed or elected, in such a manner as may be prescribed by law, for a term not exceeding four years, and until their successors are appointed or elected and qualified." Section 107 of the same instrument provides that, "The general assembly may provide for the election or appointment, for a term not exceeding four years, of such other county or district ministerial and executive officers as may, from time to time, be necessary." So far as we have been able to ascertain those sections are the only ones in the Constitution relating to the authority of the legislature with reference to the election or appointment of persons to fill office, except section 249, which relates exclusively to officers whose duties are immediately connected with and entirely appertain to the enactment of laws, and whose terms are only coextensive with that of the members of the legislature. It is, therefore, insisted by counsel for appellants, as it must be in order to maintain their position, that under the language of sections 93 and 107 of the Constitution, which is in substance the same in each of them, power is delegated to the legislature to itself select, either by election, or by appointment in the creating act itself, the officer or officers whose duties are to execute it; while it is contended by appellees' counsel that those sections *by necessary implication* limit the authority of the legislature to provide in the statute the prescribed method or means by which the officers created to execute it shall be appointed or elected, but that the legislature is given therein no authority to itself exercise the electing or appointing power. In other words, it is contended by appellees that the authority to *prescribe a manner or mode* by which an office may be filled is a distinct and separate power or authority from that of filling the office, and that contention is fortified not only by the Pratt-Breckenridge case but also by the case of Clarke v. Rogers, 81 Ky. 44, which arose under our former Constitution which our present one succeeded and in which, section 10 of article 68, practically the same language is found as in sections 93 and 107 of our present Constitution. It is also fortified by the opinions, *supra,* from the Supreme Court of Missouri, and by the Stockman, Kennon and other cases hereinbefore cited, as well as Meechem on Public Officers, section 107, wherein it is in part said: "So where the Constitution provides that all officers whose appointment is not other-

wise provided for in the Constitution shall be chosen in such manner as may be prescribed by law, it is held that, while this provision authorizes the legislature to provide by law for the appointment or election of such officers, it does not authorize the legislature itself to make such appointment or election. To make good such a claim, it is said, 'it must be made to appear that the power to direct the "manner," the mode, the way in which an act shall be done, and the power and authority to do the act itself, are one and the same thing. But that they are not identical or equivalent to each other is too clear for argument, and almost too clear to admit of illustration.' "

The Missouri Supreme Court in the case of State, ex rel. v. St. Louis, *supra,* on this point said: "But it is one thing to define an office and the duties pertaining thereto and provide for the filling of the same, and quite another thing under our Constitution (which contains the same language as does ours), for the legislature to undertake itself to appoint the officers;" and in the prior case of State v. Washburn, *supra,* the same court in referring to the similar section of the Missouri constitution said: "That section expressly authorizes the general assembly, acting within its legislative capacity, to pass a law prescribing the manner in which an appointment shall be made, but it does not authorize the general assembly to make the appointment itself, nor authorize any one unconnected with the government to do so. To provide by law the manner in which an appointment shall be made is one thing, to make the appointment is another; the one is in its nature legislative, the other is essentially executive."

Mr. Cooley, in his excellent work on Constitutional Limitations, 7th Ed., page 127, states the rule to be that, "Every positive direction (in the Constitution) contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision," and on page 99 of the same work he says: "When the Constitution defines the circumstances under which a right may be exercised . . . the specification is an implied prohibition against legislative interference to add to the condition." Those principles, applicable to interpretation of constitutions, are everywhere recognized, and when sections 93 and 107 conferred the power upon the legislature to provide for the "filling of inferior state offices in such manner as may be prescribed

by law," or to "provide for the election or appoint-
ment" of created county or district officers, the conclu-
sion is inevitable, from the language employed and in
the light of the purpose of the constitutional requirement
segregating and separating the functions of government,
that the authority of the legislature is limited to making
such provisions by exercising its authority to pass an
act containing them and directing upon whom or with
whom the power to appoint or elect was lodged, which
electing and appointing agency should, perhaps, be
selected from the department to which the duties of the
office necessarily appertain.

It may be true that numerically a greater number of
courts take a contrary view, though it is untrue that only
two state courts adopt the conclusions herein expressed
as erroneously stated by the Arizona court in the Dunbar
case, *supra*. But, whatever the number, we are con-
vinced that they by doing so are inviting destruction of
the constitutional barriers separating the departments
of government and that our interpretation is much the
sounder one and is essential to the future preservation of
our constitutional form of government as originally in-
tended by the forefathers who conceived it. Moreover,
foreign opinions are no precedents to be followed by this
court and are looked to only for their persuasive effect,
and if they fail to "persuade" by the use of sound and
logical reasoning, they should not be followed, howsoever
great their number, since false reasoning may not be
looked to for the establishment of truth whatever its
quantity, and its dangerous tendencies are increased in
proportion to the extent it is employed.

Besides the cited cases supporting the contention of
appellees as to the limitations of the authority of the
legislature under sections 93 and 107 of the Constitu-
tion, were we to adopt the opposite construction, insisted
on by appellants, it would lead to a virtual overthrow of
its sections 27 and 28 separating the functions of the
state governments into three grand departments. It will
be observed that only in section 107 is the power of the
legislature to "prescribe" and "provide" limited to any
one of the three departments. It is broad enough in
section 93 to confer the power on the legislature, if ap-
pellants' contention be true, to appoint all inferior state
officers and under section 107 to appoint all district and
county ministerial and executive officers, not provided
for in the Constitution, whether their functions be

strictly legislative, executive or judicial. The logical result of the contention, if adopted and followed, would empower the legislature to appoint or elect the private secretary to the Governor; the commissioner, sergeant-at-arms, tipstaff and bailiff of the Court of Appeals; all the officers connected with the Insurance Department; the enforcement officers of the ''Blue Sky'' law; the officers in the Geological Department; the State Tax Commission; the State Road Department, as in this case; the members of the State Board of Health, as well as those of the various counties; the county school superintendents of all the counties as well as their tax commissioners, and numerous other state, county and district officers now in existence and untold positions which may hereafter be created. If such power would not tend or serve to destroy the purpose and intention sought to be accomplished by separating the powers of government in the Constitution, it would be difficult to conceive of one that would. To thus throw open the doors would offer an incentive for the assembling of strong and corrupt lobbies at each recurring session of the legislature to procure the passage of laws, not so much for the benefit of the public, but to enable the lobbyist or some political friend of his or of members of the legislature, to obtain a salaried berth for either past or future favors, and the partial check or curb which the Constitution intended to provide against such contaminating activities would be wholly destroyed. Furthermore, such power on the part of the legislature, if a full exercise of it should be persisted in, would enable it to gradually absorb to itself the patronage and control of the greater part of the functioning agencies of the state and county governments and, thus endowed, it would be little short of a legislative oligarchy. We do not in the least intimate that any such motives influenced the 1922 session of the legislature, or any of the appellants in the passage of the act now under consideration, nor do we attribute any such designs to any of the members of that legislature, but our suggestions apply only to probabilities which it was the intention of the people in framing and adopting the Constitution to prevent as far as possible.

We are further fortified, as we believe, in our interpretation of the involved portion of section 93 and of section 107 by reference to other sections of the Constitution wherein the power and authority are expressly conferred or enjoined on the legislature to ''prescribe''.

or "provide" (by the enactment of laws), for the enforcement of the requirements of the section, an illustration of which is found in section 246, whereby the compensation of public officers, except the Governor, is limited to $5,000.00 per annum, and, "The general assembly shall provide for the enforcement of this section," etc. The imposed duty to "provide" for the enforcement of that section is as broad as the duty to "prescribe" or "provide" the "manner of," or "for" the appointment or election of officers under sections 93 and 107; and, surely, no one would contend that the legislature under the authority given it by section 246 could, by its own fiat, punish a violation of the section, or by a general law confer upon itself the right to do so. Yet, it would seem that if the thing for which the legislature should *prescribe* or *provide* (by enacted law) a *manner* or *method*, could be done by it when applied to the appointment or election of officers, could also be done directly by it when its authority is "to provide (by enacted law) for the enforcement (of the particular section) by suitable penalties," etc. So that, from whatever angle the question is viewed we are carried back to the original proposition that the legislative department shall enact or repeal laws; the executive or administrative department shall enforce them, and the judicial department shall pass upon their validity and declare them; and that neither may encroach upon the functions of the other, unless otherwise provided in the Constitution either expressly or by necessary implication, or where the exercised act is connected with and appertains to the functions of the exercising department. It is unnecessary for the purposes of this opinion for us to determine where or in what department the power to elect or appoint the officer should be lodged by the legislature, since in this case it attempted to lodge it nowhere, but to exercise the right itself, which we hold it did not possess.

What we have said applies to the selection of officers strictly; it is not intended to apply, as the question is not here, to temporary agencies for the construction of public buildings, as was held in the case of McArthur v. Nelson, 81 Ky. 67; or to a water committee, as was held in the case of Davis v. Portland Water Committee, 14 Ore. 98; or to one or a collection of persons designated to perform a single and temporary act and in no sense performing a continuous public trust. See notes to State v. Hocker,

63 Am. St. Rep. 174, on page 189. Whether the power of the legislature to appoint such temporary agencies is or not forbidden by the Constitution is not involved in this case, and we will indulge in no obiter statements with reference thereto.

Contention (2), against the constitutionality of the act would be well taken if there was no prior appropriation of funds for the payment of salaries and expenses of the State Road Department, since we are convinced that the creation of an office and providing for the payment of an attached salary with funds then appropriated for the purpose is an appropriation of money. In this case, however, it appears that the 1920 act appropriated $250,000.00 for the payment of salaries and expenses of the State Road Department, and it is our conclusion that the 1922 act in allotting a part of that already appropriated fund to the payment of salaries of the members of the commission created by the latter act was not an original appropriation of money but only the distribution, in the manner indicated, of an appropriation already made for the purpose. But we will not elaborate this point because of the conclusion hereinbefore reached.

Neither do we think contention (3), is meritorious in view of our conclusion as to contention (2), above. If the act did not carry with it an appropriation a majority of a quorum of each house, provided it was as many as two-fifths of the elected members thereto, was all that was required to pass the act and the nineteen votes which it received in the Senate met that requirement. It, then, not being an act appropriating money and, therefore, not requiring the votes of a majority of each house, the presiding officer of the Senate could not defeat the effect of his signature to the bill by a written statement above it that the act according to his interpretation was one carrying an appropriation. Indeed, we doubt if the presiding officer of either house may withhold his signature to a bill because of any grounds growing out of his *construction* of the act. Be this, however, as it may, we have concluded also not to elaborate the point for the reasons stated.

Because, however, of the conclusions expressed with reference to the legislative appointment of the commissioners created by the act, about which we have no doubt but which was reluctantly reached, we are forced to hold

the act unconstitutional, and the judgment of the trial court in doing so is affirmed. Whole court sitting. Judge Clay dissenting.

## DISSENTING OPINION BY JUDGE CLAY.

Only a question of constitutional law is presented. By the act in question the legislature saw fit to provide for a great public improvement through agencies of its own creation. . As the act is held invalid on the sole ground that appointment to office by the legislature is an invasion of the province of the executive, it necessarily results that, if this ground is not sufficient, there is no basis whatever for the majority opinion. It is true that section 27 of the Constitution provides for three separate and distinct departments of government, the legislative, executive and judicial, and that section 28 of the Constitution provides that "No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others except in instances hereinafter expressly directed or permitted." No one appreciates more than I the necessity for giving full effect to these provisions of the Constitution, and if I were persuaded that the act in question was repugnant thereto I would not hesitate to vote with the majority of the court. But it is one thing to provide that no department shall exercise any power properly belonging to either of the others, and an entirely different thing to define with accuracy the line of demarcation which separates these departments one from another. The words, "properly belonging," must mean either (1) those powers exclusively conferred by the Constitution on the particular department, or (2) those powers which have always been exercised exclusively by the particular department. In view of the peculiar provisions of our Constitution, I doubt if there is any room whatever for the second proposition, but I shall discuss the question from the standpoint of both propositions. In the first place, there is no provision of our Constitution which, expressly or impliedly, confers on the executive the sole power of appointment. Indeed, so far as the Constitution is concerned, his power of appointment is confined to the filling of vacancies and the appointment of certain officers not here involved. Sections 76, 152 and 222 of the Constitution. Not only so, but the Constitution goes further and provides, "Inferior state officers not specifically provided for in this Constitution may be ap-

pointed or elected in such a manner as may be prescribed by law for a term not exceeding four years and until their successors are appointed or elected and qualified." Section 93, Constitution. But it is insisted that the power to prescribe the manner of appointment does not carry with it the power to make the appointment. It is true that the courts of Indiana and Missouri so hold, but other courts of equal standing have taken a contrary view. In the case of Travelers Ins. Co. v. Oswega Tp., 59 Fed. 58, 7 C. C. A. 669, the Circuit Court of Appeals for the Eighth Circuit had before it the construction of section 1, article 15, of the Constitution of Kansas, which provides: "All officers, whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law." Speaking through Judge Sanborn, a jurist of great ability, the court said: "The right to prescribe the method of appointment thus vested in the legislature necessarily carried with it the right to authorize that appointment to be made by the legislature itself."

The Constitution of Maryland confers on the executive the appointment of all officers not otherwise provided for "unless a different mode of appointment be prescribed by the law creating the office." It was held in the case of Mayor, etc., of Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572, that the foregoing provision of the Constitution authorized the legislature not only to create the office, but to fill it by appointment. In discussing the question the court said:

"The Constitution surely designed to repose some discretion in the legislature, both over the mode of appointment and the propriety and necessity of passing any law on the subject to which the exercise of the power might relate. It seems difficult to suppose that the people, through the Constitution, would intrust to that branch of government nearest to the source of power the right to create an office, and to indicate others to appoint the officers and be unwilling to place the appointment with the legislature itself. The Constitution must receive an interpretation according to the sense in which the people are supposed to have understood its language; but it ought also to be construed with reference to the previous legislation of the state: State v. Wayman, 2 Gill & J. 285. And when such power has been exercised by the legislature from the earliest period of the government, is it unreasonable to suppose that the people were aware that

the same might occur again, unless prohibited by the Constitution? If there is no prohibition, express or implied, it would result from this view that the people intended the legislature should continue to exercise the power.''

Not only are these cases convincing, but sound reasoning permits of no other interpretation of our Constitution. The power to prescribe the manner of the appointment of inferior state officers necessarily carries with it the power to deal generally with the whole subject, and therefore the power to provide how, when and by whom the appointment shall be made, as well as the consequent power to make the appointment itself. That being true, our Constitution not only does not confer on the executive the sole power to appoint inferior state officers, or deny such power to the legislature, but clearly confers the power of appointment on the legislature itself.

Let us now look at the question in the light of the legislative and judicial history of our several states. To begin with, much stress is placed on the fact that Chief Justice Robertson, in the case of Taylor v. Commonwealth, 3 J. J. Mar. 401, used the following language: ''Appointment to office is intrinsically executive.''

Let us examine that language in the light of the facts. It appears from the opinion that the county court of Campbell entered an order declaring that James Taylor had forfeited and vacated his office of clerk of the court and appointing John N. Taliaferro clerk *pro tem.* To reverse that order, Taylor, who had been removed, prosecuted a writ of error. This court held that the county court of Campbell, in making the order of removal and appointment, acted only in an executive and not a judicial capacity, and that being true, a writ of error would not lie. The case, therefore, is authority only for the position that appointment to office, though made by the court, is merely an executive act, which cannot be reviewed by writ of error. It is not authority for the contention that appointment to office is exclusively an executive function. Clearly there is a wide difference between an executive act which may be performed by any one of the departments, and an exclusively executive functon which can be performed only by the executive department. The distinction is clearly pointed out in the case of Mayor, etc., of Baltimore v. State, *supra,* where the court used the following language:

"It is contended that, the power of appointment being an intrinsic executive function, the naming of the commissioners in the law was in violation of the sixth article of the Declaration of Rights, 'that the legislative, executive and judicial powers of government, ought to be forever separate and distinct from each other, and no person exercising the functions of one of said departments shall assume or discharge the duties of any other.'

"We are not prepared to admit that the power of appointment to office is a function intrinsically executive, in the sense in which we understand the position to have been taken; namely, that it is inherent in, and necessarily belongs to, the executive department. Under some forms of government, it may be so regarded, but the reason does not apply to our system of checks and balances in the distribution of powers, where the people are the source and fountain of government, exerting their will after the manner, and by instrumentalities, specially provided in the Constitution. The case cited, Taylor v. Commonwealth, 3 J. J. Mar. 401, affirms that it is intrinsically executive; but the judge explains that the nature of the power is executive, whether exercised by the Governor or a court, as distinguishd from those acts of the court that are merely judicial. But it is nowhere intimated that another department than the executive cannot exercise the power. On the contrary, the case was disposed of on the ground that the court had the power to appoint the clerk, and that its judgment could not be interfered with by way of appeal from the order of appointment. And indeed, here it is admitted that the executive cannot act where other modes of appointment are prescribd by the Constitution. It is true that certain powers are peculiar to each department, as their designations import: Wright v. Wright's Lessee, 2 Md. 452, 56 Am. Dec. 723; the legislature makes the laws, the judiciary expounds them, and the Governor sees that they are faithfully executed; but even in this duty, he is restrained in some degree, because they must be enforced according to the Constitution and laws, and not at his will and discretion. It does not follow as a necessary conclusion that, in order to perform his duty, he must have agents of his own nomination. Our form of government, in its various changes, has never recognized this power as an executive prerogative. Under the Constitution of 1776, although appointments were generally made by the Governor and council, some of the most important were not. Registers of wills

were commissioned by the Governor, on the joint recommendation of the senate and house of delegates, the power of the Governor and council to make an appointment being limited to vacancies during the recess of the legislature, and then to continue only until its next meeting. So the clerks of courts were appointed by the judges, the power of the executive being restricted to cases of vacancy, and until the meeting of the court. This, however, was changed by the amended Constitution of 1836, which conferred the power of appointment on the Governor, by the advice and consent of the Senate, a branch of the legislature, yet *pro hac vice* discharging executive duties. If we look to the present Constitution, we find a similar state of things. The clerks and registers and other officers are elected by the people, but when vacancies occur, the office is not in all cases, though in some, filled by the executive. In such emergency, the clerks and state's attorneys are appointed by the court, the register of wills by the orphans' courts, constables by the county commissioners, etc.; and as to the clerk of the Court of Appeals, the executive department has no power whatever, the appointment residing with the judges. Under the old Constitution the treasurer and commissioner of loans were appointed by the house of delegates, the Governor's power extending only to cases of vacancy; and under the present, the treasurer as well as the librarian receive their appointments from the legislature. These instances are sufficient to show that the Constitution, so far from treating this as an inherent executive power, indicates that it belongs where the people chose to place it.''

In the case of Sinking Fund Commissioners v. George, 104 Ky. 260, the question was sharply presented, and after an elaborate discussion of the authorities, it was held that the act of March 5, 1898, creating a board of penitentiary commissioners was not unconstitutional. on the ground that the power of appointment was exercised by the legislature itself. That case was followed in the cases of Purnell v. Mann, 105 Ky. 87, 48 S. W. 407; Poyntz v. Shackelford, 107 Ky. 546, 54 S. W. 855, and Sweeney v. Coulter, 109 Ky. 295, 58 S. W. 784, but was afterwards departed from in the case of Pratt v. Breckinridge, 112 Ky. 1, 65 S. W. 136, 4 L. R. A. 79; but, as will hereafter appear, that case is not in accord with the great weight of authority.

I have not had the time to search the statutes for the purpose of ascertaining in how many instances the power of appointment has been exercised by the legislative and judicial departments. For years and years the legislature elected the warden of the penitentiary. For years and years it has continued to elect the state librarian. For years this court elected the custodian of the public grounds, and at the present time the bond recorder of the city of Louisville is elected by all seven judges, although his duties concern only the criminal courts.

Let us now see what the courts of other states have to say on the question. In the case of People v. Langdon, 8 Cal. 16, we find the following:

"The power to fill any office is political, and the power is exercised in common by the legislature, the governors, and other executive officers of every state in the Union, unless it has been expressly withdrawn by the organic law of the state. That it has not been by our Constitution there can be no doubt: First, because there is no clause that would warrant such a construction; and, second, because there are several that would forbid it.

"It would be useless to pursue this argument further. This power has always been exercised by the legislature, and never before denied. It is not prohibited by the Constitution, and according to the theory and spirit of our institutions, is safer when exercised by the immediate representatives of the people than when lodged in the hands of the executive."

In the subsequent case of People v. Freeman, 80 Cal. 233, 13 A. S. R. 122, it was held that the power of appointment was not an exclusively executive function, but might be exercised by the legislature itself. In an elaborate note to that case, Mr. Freeman sums up the doctrine as follows:

"The truth is that the power of appointing or electing to office does not necessarily and ordinarily belong to either the legislative, the executive or judicial department. It is commonly exercised by the people, but the legislature may, as the law making power when not restrained by the Constitution, provide for its exercise by either department of the government, or by any person or association of persons whom it may choose to designate for that purpose. It is an executive function when the law has committed it to the executive, a legislative function when the law has committed it to the legislature, and a judicial function, or at least a function of a judge,

when the law has committed it to any member or members of the judiciary. The legislature, unless inhibited by the Constitution, may exercise its power in either of the three modes: (1) It may, by a statute, create an office, and name persons who are to fill it. State v. Seymour, 35 N. J. Law 48; Daley v. City of St. Paul, 7 Minn. 390; Mayor of Baltimore v. State, 15 Md. 376, (74 Am. Dec. 572). (2) It may by law create an office, and provide that it shall be filled by election or appointment by the legislature in joint convention assembled. People v. Langdon, 8 Cal. 1; People v. Fitch, 1 Cal. 536; and the principal case. (3) It may, after creating an office, provide that it may be filled by appointment made by any person or by the members of a voluntary association, as by the members of the chamber of commerce, and the presidents and vice presidents of the marine insurance companies of a certain city, or by the members of the board of underwriters of such city; nor is it necessary that the persons thus designated be citizens of the United States, and authorized to vote as such. Sturgis v. Spofford, 45 N. Y. 446; In re Bulger, 45 Cal. 556."

In the case of People v. Morgan, 90 Ill. 558, the court said:

"The executive power in the state is understood to be that power, wherever lodged, which compels the laws to be enforced and obeyed. The instrumentalities employed for that purpose are officers, elected or appointed, who are charged with the enforcement of the law. But the power to appoint is by no means an executive function, unless made so by the organic law or legislative enactment; and in this case it is not so unless the power is thus conferred. If it were conceded that these appointments were the exercise of political power, would it necessarily be violative of any provision of the Constitution? The division and allotment of powers are not into political, executive and judicial, but into legislative, executive and judicial. It was, no doubt, the exercise of political power, as that embraces all governmental powers and functions, whether exercised by one department or another, or the officers of one or the other. Political power is the policy of government or its administration, and may be exercised either in the formation or administration of government, or both. Hence it follows that, if it be a political power, that of itself in no wise militates against its exercise by a person belonging to the judicial department of the government."

In Overshiner v. State, 156 Ind. 187, 59 N. E. 468, 51 L. R. A. 748, 83 A. S. R. 187, the court said:

"We concede in fullest terms appellant's contention that our state government is composed of three distinct and co-ordinate branches, viz., the legislative, executive (including the administrative), and judicial, and that the powers that are committed by the people to one branch cannot be exercised by those performing duties in another without express authority to do so, or the exercise of such powers becomes essential or appropriate to the effective discharge of the duties imposed upon such branch. And while it has been many times decided by this and other courts that, as a general rule, the power of appointment to office is an appropriate executive prerogative, yet, as said by Mitchell, J., in Hovey v. State, 119 Ind. 401, 21 N. E. 21: 'It is a fundamental error, however, to assume that the exclusive right to exercise the power of appointment is included in the general grant of power to the executive.' In the distribution of governmental power the people had the undoubted right to lodge any part of it where it pleased them, and, when expressly placed, the court will suffer no encroachment upon it by those acting in another department; but where the Constitution is silent, and the question is one of public policy, or relates to the best means or agency for the attainment of some governmental end, it must be presumed that the framers of the Constitution intended to invest the legislative body with a large discretion in the selection of the agencies most suitable and beneficial to the public."

In the case of Cox v. State, *supra*, the court used the following language:

"First, as to the power of the legislature to make appointments to office: In the United States the general power to appoint officers is not inherent in the executive or in any other branch of the government. It is a prerogative of the people, to be exercised by them or that department of the state to which it has been confided by the Constitution. The legislature has, we think, power to make appointments to office, unless its powers in that respect are restricted by the Constitution, either expressly or by implication."

The Constitution of Tennessee is the same as ours, and the Supreme Court of that state had the following to say in a very able opinion delivered by Judge Shields in the case of Richardson v. Young, 122 Tenn. 471:

"Whatever may have been its nature theoretically, in practical application in this country, this power has not been considered as belonging to either of the departments, or any general rule observed in vesting it. It will hardly be found vested in the same way in the fundamental law of any two of the states. In every case involving the right of its exercise by a particular department, courts are necessarily to be governed by the special provisions of the Constitution of the state where the question arises. We think, from a general review of the authorities, that it is now established that under the American form of government the power of election or appointment to office is a political power, not inherently legislative, executive or judicial, but which may be vested with equal propriety in either of them, and that it is so treated and applied in a majority of the states.

"There is some conflict in judicial opinion upon this question, resulting generally from the differences in the fundamental law of the several states; but we think our conclusions are supported by the weight of authority, especially by the decisions of the courts of the states which have constitutional provisions concerning the appointing power identical or similar to those of this state.

"Among other cases are those of People v. Langdon, 8 Cal. 16; People v. Morgan, 90 Ill. 558; Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572; Overshiner v. State, 156 Ind. 187, 59 N. E. 468, 51 L. R. A. 748, 83 Am. St. Rep. 187; People v. Freeman, 80 Cal. 233, 22 Pac. 173, 13 Am. St. Rep. 122; Cox v. State, 72 Ark. 97, 78 S. W. 756, 105 A. S. R. 17; Americus v. Perry, 114 Ga. 881, 40 S. E. 1004, 57 L. R. A. 230; People v. Hurlbut, 24 Mich. 63, 9 Am. Rep. 103; Atty. Gen. v. Bolger, 128 Mich. 355, 87 N. W. 366; State v. Irwin, 5 Nev. 111; Sturgis v. Spofford, 45 N. Y. 446; Rogers v. Buffalo, 123 N. Y. 173, 25 N. E. 274, 9 L. R. A. 579; People v. Bennett, 54 Barb (N. Y.) 481; State v. George, 22 Ore. 142, 29 Pac. 356, 16 L. R. A. 737, 29 A. S. R. 586; Biggs v. McBride, 17 Ore. 648, 21 Pac. 878, 5 L. R. A. 115; Fox v. McDonald, 101 Ala. 51, 13 South 416, 21 L. R. A. 529, 46 A. S. R. 98; Ex Parte Siebold, 100 U. S. 371, 25 L. Ed. 717; Cherry v. Burns, 124 N. C. 761, 33 S. E. 136; Cunningham v. Sprinkle, 124 N. C. 642, 33 S. E. 138; State v. Seymour, 35 N. J. Law 54; Hovey v. State, 119 Ind. 401, 21 N. E. 21; Ex Parte Gerino, 143 Cal. 414, 77 Pac. 166, 66 L. R. A. 249; State v. Rosenstock, 11 Nev. 128; Sinking Fund

Com'rs v. George, 104 Ky. 260, 47 S. W. 779, 84 S. S. R. 454 . . .

. "Cases cited by complainants as sustaining their position that the appointing power is inherently an executive function, belonging to the executive, are State v. Kennon, 7 Ohio St. 546; State v. Stanley, 66 N. C. 59, 8 Am. Rep. 488; People v. Bledsoe, 68 N. C. 457; State v. Offill, 74 Neb. 669, 105 N. W. 1099; State v. Hocker. 39 Fla. 477, 22 South 721, 63 A. S. R. 174; State v. Barbour, 53 Conn. 76, 22 Atl. 686, 55 Am. Rep. 65; State v. Denny, 118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65; Evansville v. Indiana, 118 Ind. 426, 21 N. E. 267, 4 L. R. A. 93; Jameson v. Denny, 118 Ind. 382, 21 N. E. 252, 4 L. R. A. 79; Pratt v. Breckinridge, 112 Ky. 12, 65 S. W. 136, 66 S. W. 405; Taylor v. Com., 3 J. J. Marsh. 401; State v. Washburn, 167 Mo. 680, 67 S. W. 592, 90 A. S. R. 430.

"The Ohio and North Carolina cases are not authority here because the constitutions of those states, when these decisions were made, absolutely prohibited the legislature from exercising any appointing power.

"After the North Carolina cases were decided, the Constitution of that state was amended so as to eliminate the prohibitory clause, and under a provision similar to article 7, section 4, of the Constitution of Tennessee, it was held that the General Assembly could exercise the power directed. Cherry v. Burns, 124 N. C. 761, 33 S. E. 136; Cunningham v. Sprinkle, 124 N. C. 642, 33 S. E. 138.

"The Florida case is not in point, as the Constitution of that state committed the appointing power to the people and the Governor, when not otherwise expressly vested in that instrument.

"The cases of Taylor v. Commonwealth and State v. Barbour, *supra,* while stating abstractly that the power is an executive function, do not really involve the question here presented.

"The Indiana cases cited do support complainant's position; but the contrary seems to have been held in Hovey v. State, 119 Ind. 395, 21 N. E. 21, and Overshiner v. State, 156 Ind. 187, 59 N. E. 468, 51 L. R. A. 748, 83 A. S. R. 187, from which we have quoted.

"The cases of State v. Washburn and Pratt v. Breckinridge, *supra,* fully sustain complainants; but, so far as our investigations have extended, the courts of Missouri and Kentucky stand alone in adhering strictly to the doctrine of the exclusive right of the executive to exercise

the appointing power, in the absence of constitutional provisions vesting it otherwise. We do not think it is necessary, in the view we have taken of the question, to review these cases."

To the foregoing I may add the following from 12 C. J., p. 836:

"By some authorities the power of appointment to office is regarded as *per se* an executive function, which, therefore, may not be exercised, vested or controlled by the legislature except in so far as it is a necessary incident to the exercise of legislative power or is vested by the Constitution in the legislature. By the *great weight of authority*, however, the *power of appointment* is *held not to be per se an executive function*, and unless the appointment of particular officers is, by the Constitution, expressly conferred on the executive department or forbidden to the legislature, the latter may, by statute, vest the power of appointment in its discretion."

It is clear from the authorities quoted, and from other authorities which I might quote if I had time, that from the foundation of our state governments to the present time, appointment to office has never been regarded as belonging exclusively to the executive department in the absence of a constitutional provision to that effect; and as our Constitution not only does not contain such a provision, but, properly construed, confers the power to appoint inferior state officers on the legislature itself, there can be no doubt that the exercise of that power by that body is not the exercise of a power "properly belonging" to the executive department.

Of course, I need take no time in discussing the "unnumbered woes" which, it is claimed, will follow if the legislature is permitted to exercise the power conferred by the Constitution. That is a matter which doubtless addressed itself to those who framed the Constitution, and it is apparent that they were not frightened by the prospect. I may add, however, that history records but few instances where the people have been oppressed by their representatives, but many instances where they have been the victims of tyranny on the part of their executives.

It is said in the majority opinion that Pratt v. Breckinridge has been acquiesced in for a long time, and that the question should be finally settled. As a matter of fact, however, Pratt v. Breckinridge has never been acquiesced in, but has been entirely ignored. For years

after it was handed down, the legislature elected the prison commissioners, and no one questioned its right, for the simple reason that no one believed for a moment that the minority rule announced in Pratt v. Breckinridge would ever be followed by this court. It is true that the question should be settled, but why not settle it in accordance with the established principles of constitutional law as repeatedly announced, not only by this court, but by the great majority of the courts of this country?

Of course any attempt to distinguish between the election or appointment of a state librarian and the election or appointment of a state highway commissioner is a mere play upon words, and if it is to be regarded as the settled law of this state that appointment to office is an exclusively executive function, and that the legislature cannot appoint a state highway commissioner, it follows inevitably that the legislature is without authority to elect a state librarian.

For the foregoing reasons I respectfully dissent.