## Coleman, Auditor, v. Mulligan.

(Decided June 6, 1930.)

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellant.

GARDNER K. BYERS for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

James E. Mulligan filed his petition in the Franklin circuit court against Clell Coleman, as auditor of public accounts, alleging these facts: He was a deputy in the office of the sheriff of Jefferson county, and at various times, set out in the petition, was appointed by the sheriff to be the officer in charge, and whose duty it was to provide for the conveyance and transportation of sundry prisoners from the jail of Jefferson county to the state prisons or the house of reform, and, while acting as such, and by virtue of the authority vested in him, he employed and had charge of certain guards, not exceeding two guards for every two prisoners, and so during the months of February and March transported ninety-three prisoners to the prisons or house of reform; the guard being employed to assist him in so transporting them, and the prisoners being so transported from Jefferson county to the state prisons or the house of reform, to which each of them had theretofore been committed, over the nearest traveled route, and in addition thereto the plaintiff, as such officer, performed the duty of feeding the prisoners while en route, and in so doing he expended the sum stated in the petition. The amount of the claim was $1,813.03. It was regularly allowed by the Jefferson circuit court, but the auditor refused to pay it, and thereupon Mulligan brought this action to obtain a mandamus against the auditor requiring him to pay the claim. The circuit court overruled the auditor's demurrer to the petition. The auditor filed answer. The circuit court sustained the plaintiff's demurrer to the answer, and entered judgment for the plaintiff. The auditor appeals.

Section 361, Kentucky Statutes, which is a part of the chapter regulating claims upon the treasury, provides for the allowance of officers for conveying prisoners as follows:

"For conveying prisoners to penitentiary, ten cents per mile for officer and each guard, to be calculated by the nearest traveled route, and the actual necessary expenses for feeding, lodging and transporting the prisoner; but the number of guards employed in conveying prisoners shall not exceed one for every two prisoners. When but one prisoner is conveyed no guard shall be employed."

The claims were made out under this section. The auditor insists that the section has no application to the sheriff of Jefferson county or one of his deputies by reason of section 106 of the Constitution, which provides as follows:

"The fees of county officers shall be regulated by law. In counties or cities having a population of seventy-five thousand or more, the Clerks of the respective courts thereof (except the Clerk of the City Court), the Marshalls, the Sheriffs and the Jailers, shall be paid out of the State Treasury, by salary to be fixed by law, the salaries of said officers and of their deputies and necessary office expenses not to exceed seventy-five per centum (75%) of the fees collected by said officers, respectively, and paid into the Treasury."

It will be observed that this provision relates to "the salaries of said officers and of their deputies and necessary office expenses." It has no reference to other expenses of the sheriff or his deputies which are not, properly speaking, office expenses. Other expenses of the sheriff or his deputies may be provided for by law, and especially is this true when by law the duty to be performed by the officer requires him to leave Jefferson county and go to other parts of the state. The Constitution has been in force for nearly forty years. During this whole time, without exception, such claims by the officers of Jefferson county have been paid, and, though we have had a number of successive administrations, this objection was never raised before the present auditor came in and the present Attorney General advised against the payment of such claims.

It will be observed that the statute only allows the officer the actual necessary expenses for said lodging and transporting the prisoners. He must pay his own expenses and the expenses of his guards, and the only return that is made to him is the allowance of ten cents a mile. This allowance of ten cents a mile is a legitimate estimate of the reasonable expenses of the officer. There are always incidental expenses to every trip. The officer and the guard must have food, and not infrequently must hire vehicles, such as busses or cars. The Legislature evidently did not intend all these things to be left unpaid,

and, as the expenses might vary from time to time, it fixed ten cents a mile as the gross allowance that might be paid to cover all these expenses of the officers and the guards. There are a number of similar statutes. The circuit judge by the Act of 1926 (c. 31), when engaged outside of his district, is allowed, in addition to his salary, his actual expenses not exceeding $10 a day, and by the Act of 1928, c. 20, the circuit judges, as members of the judicial council, have an allowance of $10 a day for expenses. Both of these acts have been upheld. Again, by section 1098, Kentucky Statutes, the clerks of circuit courts, on a change of venue, are allowed ten cents a mile for the expenses of travel. The members of the Legislature are allowed mileage in addition to their pay. The electors for President and Vice President receive the same per diem and mileage as are allowed to a member of the Legislature. Kentucky Statutes, sec. 343. In all of these cases the mileage is simply an amount estimated by the Legislature to cover the officers' expenses, and we see no reason why the same rule should not be applied to section 361, Kentucky Statutes, above quoted.

The rule as to the long practical construction of a constitutional provision where the language is doubtful is thus well stated in 12 C. J. pp. 714, 715:

"A contemporaneous legislative exposition of a constitutional provision is entitled to great deference, as it may well be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded.

"Legislative or executive construction of constitutional provisions, adopted and acted on with the acquiescence of the people for many years is entitled to great weight with the courts; and where not manifestly erroneous, it will not be disturbed. The injustice that would inevitably result by the disturbing of such constructions after a long period of acquiescense therein, during which many rights will necessarily have been acquired, is a very strong argument against it."

The reason for the rule in cases like this is that the public business must go on, and it is to the interest of all that there should be no confusion about it. The special demurrer to the petition was properly overruled, for

the guards being employed by the officer were not necessary parties to the action. The statute makes the allowance to the officer.

Judgment affirmed.

Whole court sitting.