AMERICAN HARDWARE MUTUAL
INSURANCE COMPANY,
Appellant,

v.

Chester FRYER and Martha Fryer, and
Horse Cave State Bank, Appellees.

No. 83-CA-379-MR.

Court of Appeals of Kentucky.

Sept. 14, 1984.

Discretionary Review Denied by
Supreme Court June 27, 1985.

James David Bryant, Harlin, Parker & Rudloff, Bowling Green, for appellant.

Robert B. Hensley, Hensley, Talley, Dunn & Ross, Horse Cave, James C. Ladd, Munfordville, for appellees.

Before WILHOIT, WHITE and DUNN, JJ.

DUNN, Judge.

This case involves destruction by fire of a building and its contents, the insurer of which, the appellant company, unsuccessfully defended on the basis of arson and fraud a suit against it by the insureds, the appellees Fryers, for the policy proceeds. This appeal is from a Hart Circuit Court jury verdict judgment against the appellant company for $87,305.79 representing the

appellees Fryers' personal property loss. We affirm.

Chester Fryer and his wife, Martha, co-appellees, owned the only Massey Ferguson dealership in Hart County, the Hart County Implement Company, a partnership begun in April, 1980. The building and its contents were insured under two policies with the appellant company, American Hardware Mutual Insurance Company. The building and most of its contents were destroyed by fire on November 30, 1981. Their claims for $75,000.00 for the building loss and $87,305.79 for contents loss, a total of $162,305.79, were denied by American Hardware.

The Fryers sued American Hardware on the policies, joining as party defendant the co-appellee, Horse Cave State Bank, the mortgagee of the building. American Hardware answered, alleging as its defense fraud and arson by the Fryers. The bank answered, counterclaiming against Fryers for $135,628.28 on its note and mortgage and under the loss payable clause of the policy, cross-claimed against American Hardware, which replied, denying the cross-claim. It eventually paid the bank $75,000.00, its policy limits on the building, but refused to pay interest allegedly accrued during the delay in making payment, maintaining that the bank had not complied with policy terms in making its claim.

American Hardware's version of the alleged arson is that Nicky Wilkerson, a hanger-on around the office of Hart County Sheriff Humphrey, was hired by Fryers to arrange the burning of the building and its contents. Wilkerson in turn hired Frank Ballard and William Ballard to actually do the burning. This version is supported by state police arson investigators, M.P. Stevens, and detective, Ron West, who procured statements from the Ballards admitting in detail their participation in the arson and implicating Wilkerson and the Fryers.

After various pre-trial motions and orders, delays for cause, illness of the trial judge and appointment of a special judge and last minute additional motions, a jury trial was finally had on November 8 and 9, 1982, resulting in the above jury verdict judgment in the Fryers' favor for $87,305.79 and from which this appeal is prosecuted.

The cardinal issues advanced by American Hardware concern in various ways hearsay testimony by the State Police officers regarding statements by the Ballards and tapes of Wilkerson and Sheriff Humphrey implicating Wilkerson in the arson and through him implicating the Fryers. It maintains the trial court erred by: 1) not permitting the two officers to directly testify regarding the hearsay testimony under the general exceptions and specifically under the "expert testimony" exception to the hearsay rule; 2) recognizing Wilkerson's 5th Amendment privileges and not requiring him to testify or to be made a third party defendant so that the hearsay testimony could be admitted to impeach him if he denied being involved; 3) failure to permit the introduction of a telephone tape to impeach Sheriff Humphrey; and 4) failure to join the Ballards as third party defendants and thus pave the way for introduction of the hearsay testimony.

We shall address these 4 issues before others that American Hardware advances, some of which may become moot.

■ It was not error for the trial court to prohibit the state police officers from directly testifying and relating the hearsay testimony in question. The effect of their testimony would have been that they had statements from the Ballards who told them that Wilkerson told the Ballards that Fryer hired him to hire them to burn the premises and its contents for a certain sum of money and that they did so.

■ First, generally in order to allow a jury to consider hearsay evidence there must be present the coalescence of "necessity" (that it cannot be presented in a non-hearsay form) and "trustworthiness" that a typical hearsay statement does not possess. *See* R. Lawson, *Kentucky Evidence Law Handbook* Sec. 8.00 (1976). Here the first

requirement is obviously satisfied, but the second is not. Even by expanding the dying declaration trustworthiness exception to our case, one where the declarants, the Ballards, are absent from the jurisdiction, the element of trustworthiness is absent. The statements are against penal interest and not pecuniary interest and as such lack trustworthiness. *Hamburg-Bremen Fire Ins. Co. v. Ohio Valley Dry Goods Company's Trustee*, 160 Ky. 252, 169 S.W. 724 (1914). *See also* Lawson, *supra*, Sec. 8.40, Comment II.

■ Second, we have no quarrel with the hearsay rule exception that an expert witness may express a testimonial opinion that is based in part upon hearsay evidence, nor do we take exception to the fact that the officers were experts. American Hardware strongly argues this exception is applicable. However, it is confined to hearsay material produced by qualified personnel and on which experts customarily rely. It requires that the information be scientific, technical or specialized in nature and outside the scope of common knowledge and experience. *See* Lawson, *supra*, Sec. 6.10. Under our facts the hearsay evidence sought to be admitted fails on all three counts. 1) the Ballards and Wilkerson are not experts; 2) the statements that Fryers procured Wilkerson, who hired the Ballards to burn the building, and who did so, are not scientific, technical or specialized in nature; and 3) such information is within, not outside, the scope of common knowledge. The trial court in sustaining the objection to the officers' testimony based on this exception properly considered it in this same light, and did not, as charged by American Hardware, erroneously apply a rigid and antiquated standard in excluding the testimony. Rule 703 of the Federal Rules of Evidence is no less rigid in its application. *See* Lawson, *supra*, Sec. 6.10, comment IV. Here this exception is inapplicable both under Kentucky law and the Federal Rules of Evidence. The fact that the legislature in KRS 227.220 recognizes the magnitude of arson problems and directs investigation and enforcement of laws concerning it, does not enhance or broaden this evidentiary exception.

Another unsuccessful attempt to introduce those parts of the Ballards' and Wilkerson's statements and tapes implicating the Fryers in setting the fire was by calling Wilkerson as a witness. In a deposition, he made certain denials and other statements that, if repeated in his trial testimony, would have set the stage to impeach his testimony by using the damaging parts of the statements and tapes. The trial court, in an in camera hearing, however, permitted Wilkerson to take advantage of his 5th Amendment rights to remain silent. American Hardware immediately thereafter called him as a witness before the jury. The trial court, in view of its in camera ruling, permitted no proof to be taken of him.

■ American Hardware's complaint that it was error not to require him to plead his 5th Amendment rights in front of the jury has no merit. Its argument that the trial court erred in sustaining his 5th Amendment invocation has greater merit since it is possible that he waived those rights when he voluntarily did not remain silent during his deposition. But, any error attendant thereto was not preserved for appellate review. Although urged to do so by the trial court, American Hardware's counsel asked Wilkerson no questions by way of avowal, either in chambers or before the jury, concerning the depositions or anything else. As a result there is nothing in the record by which to determine the prejudicial effect of the error, if any, or to determine if the 5th Amendment should be applied. *Williams v. Payne*, Ky., 515 S.W.2d 618 (1968).

American Hardware further urges it should have been permitted through the testimony of Officer West to impeach the testimony of Sheriff Humphrey who denied knowing anything about the origin of the fire. On avowal the officer testified he had taped a phone conversation between Frank Ballard and the Sheriff. The trial court denied its use. The following avowal testimony of Officer West accurately reflects

the salient features of the conversation in question:

Q16 Did your investigation indicate that Frank Ballard made contact with Daymond Humphrey and arranged a meeting—arranged this particular meeting with Nicky Wilkerson?

A. Well, it came to my attention that Daymond Humphrey, the Sheriff of Hart County, had knowledge of this fire. At least, that's what the Ballards told me. Well, I wanted to establish for a fact that he did, so I had Frankie to call Daymond. And Frankie calls Daymond on the 'phone and the 'phone conversation was recorded. And he asked Daymond if he had heard anything. Now, Daymond at no time during the conversation ever asked Frankie what he was talking about—because it's obvious that he knows what he's talking about. He asked him, "Have you heard anything?" And Daymond's reply is that no, he hadn't heard anything. And he asked if he had seen Nicky around and he said no, he hadn't seen him today, but he was most generally around the jail. And the best that I can remember, he asked Daymond, said, told Daymond that it was being looked into, and Daymond's reply was, "Who'd be doing it, the state?" And Frankie says yes. And Daymond comes back with, says, "I'll tell you what I'll do", says, "I'll get that item in here for you", he refers to Nicky Wilkerson as an item, says, "I'll get that item in here for you and you give me a call back tomorrow", or words to that extent. At that point it was obvious to me that there had to be some truth in what the Ballards was telling me; because, as I pointed out, Daymond at no time during this conversation said, "What are you talking about?" He knew what he was talking about.

Just how this conversation would impeach the direct testimony of the Sheriff with respect to his lack of knowledge of the fire in question completely escapes us. The fact is the subject matter of the conversation cannot be determined from the words spoken. The fact that the Sheriff did not ask Frankie to identify the subject matter is indicative of nothing other than that the Sheriff knew what the subject matter was but is not indicative of what the subject matter was. To interpret the language as even being about a fire, much less this one, requires preconditioning that is not justified by the evidence.

The officer's answers on cross-examination during the avowal clearly illustrates the basic weakness and inapplicability of the "impeaching" evidence:

Q1 For clarification, Detective West, there was a fire involving Nicky Wilkerson's mobile home that occurred somewhere along about the same time as the Fryer building, is that correct?

A. It happened in the same month, November.

Q2 So it would have been earlier than the Fryer fire?

A. Yes, sir.

Q3 Now, based on your investigation, did you learn that the Ballards ever had any contact at all with Chester or Martha Fryer?

A. According to the Ballards, at no time did they ever contact Chester or Martha Fryer.

Q4 So—your information here is that the Ballards told you that Wilkerson told them that Chester Fryer was interested in the building being burned?

A. Yes sir.

Q5 Okay. Now, Nicky Wilkerson has never admitted anything to you?

A. No, sir.

Q6 And, of course, the Fryers have never admitted any involvement in this.

A. I have never questioned the Fryers.

Q7 Well, they haven't admitted any involvement to you then—

A. Okay.

Q8 You have never actually asked them about it at all?

A. No sir, I haven't....

Q11 And you are making your conclusions as to what they were talking about

based upon your interpretation of this conversation.

A. It's not a conclusion; it's just a ... it's an opinion.

Q12 I understand. Your opinion, let's call it that.

A. I haven't concluded anything.

Q13 Okay, but you gave your opinion a few minutes ago that it was obvious to you that Daymond knew what Ballard was talking about.

A. Yes.

Q14 Okay. Now, could you reach the opinion that they could have been talking about the Wilkerson fire from that conversation?

A. They could have.

Q15 Okay. And you could just as easily conclude that they were not even talking about the Fryer fire, couldn't you?

A. Yes.

■ It is clear from all of the above that Officer West's testimony concerning this conversation was inadmissible, not just because of its hearsay aspects, but also because it not only does not tend to impeach the Sheriff, but contains no facts material to the issue at hand, the Fryers' involvement, which would make the application of the substantive evidence feature of *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969), inapplicable. There was no error in this regard.

In what was an admitted effort to facilitate receipt of their statements in evidence as parties to the action, American Hardware on September 3, 1982, filed a motion to join the Ballards as third party defendants "under provisions of CR 14 and CR 19." At that time the trial date, having been continued from July 2, 1982, was September 15, 1982. It was again continued by the trial court on September 13, 1982, to September 29, 1982. On September 14, 1982, the trial court entered an order overruling American's motion to "File a Third Party Complaint against William Ballard and Frank Ballard and Nicky Wilkerson." The record contains no such motion as to Wilkerson. Nonetheless, American Hard-

ware argues this refusal was prejudicial error.

■ Its argument based on CR 19 has no merit whatsoever. None of the conditions necessary for the application of the rule are present. As far as its CR 14 argument is concerned, it is within the sound discretion of the trial court to permit third party relief. *Commonwealth, Department of Highways v. Louisville Gas & Elec. Co.*, Ky., 346 S.W.2d 536 (1961). Inordinate delay in seeking third party relief so as to create unreasonable resolution of the controversy and seeking it as a subterfuge rather than as a means of avoiding circuity of actions are each factors to be considered by the trial court in the exercise of its discretion. Here American Hardware delayed till September 3, 1982, just before the trial date then set, to seek third party relief. If the trial court had granted it, the trial delay resulting no doubt would have been significant. American admits its only purpose in seeking this relief was so that it could accomplish "the introduction of their statements into evidence without the taint of hearsay prohibitions." Its purpose was not to prevent circuity of actions, a salutary, prime purpose of the rule, but rather to accomplish an evidentiary tack. Either or both of these factors, inordinate delay or subterfuge, would justify the trial court's denial of the motion and negate the charge of abuse of discretion. American's ability to collect from any, or all, of the three is not impaired by the denial. It can still bring an independent action against them. The denial was not error.

Assuming arguendo, that the parts of the statements implicating the Fryers in the alleged arson were proper to admit under each argument advanced by American Hardware, they still could not be received and applied to the Fryers and used as substantive evidence against them. Since the Fryers, Wilkerson and the Ballards were allegedly, according to the statements and tapes, conspirators in the alleged arson and, since the statements implicating the Fryers were made after the fire, they were not made in furtherance of the

conspiracy, and thus, were inadmissible pursuant to the following rule in *Lawson, supra,* Sec. 8.20, concerning admission of hearsay statements of conspirator:

(A) General Rule: In both criminal and civil litigation, an extra judicial statement by a participant, in a conspiracy may be introduced as an "admission" against all other participants in that conspiracy if the statement was made in furtherance of the conspiracy. . . .

(2) A statement made after the objective of a conspiracy has been accomplished is not admissible under this rule. . . .

Consequently, under none of the circumstances of this case could American Hardware under this rule succeed in presenting these hearsay statements to the jury. *Ray v. Commonwealth,* Ky., 284 S.W.2d 76 (1955).

There remain four additional issues not directly related to the hearsay issues, none of which are meritorious. American Hardware claims error because the trial court denied its motion to dismiss the action as to the Horse Cave State Bank thereby denying to it the ability to have the case transferred to Federal Court where it believes more liberal evidence rules would permit it to have the statements admitted in evidence. It was not error to deny dismissal, since the Bank had an unresolved issue of interest owed to it on its cross-claim against American Hardware. Even so, as noted above, in that portion dealing with hearsay generally, the Federal Rules of Evidence do not substantially differ from Kentucky's in this regard and are not substantially more liberal. There would, therefore, be no prejudice on this ground. The Federal Court's refusal to accept the case placed this issue out of reach of the trial court.

American Hardware also complains about the trial court instructing the jury that if it found for the Fryers it would award them as damages on their personal property loss the difference between its fair and reasonable market value immediately prior to the fire, and immediately after, not to exceed the sum of $87,305.79,

the amount of the jury's verdict. We quite agree that this instruction is one for tortious damage to property. However, we disagree that it had any erroneous prejudicial effect to American Hardware on the amount of the jury's verdict.

To begin with, if there was error, it was not preserved for appellate review. American Hardware did not object to the instruction other than to ask that the language be enlarged to "fair and reasonable market value at cost", the words "at cost" being those added. Since the only proof presented about the damages was on a cost or cash value basis, the instruction used is no different than the one suggested.

Assuming this reason not to be a valid one, the result is still the same. The policy provides that "actual cash value" of the property is the measure to be applied with proper deduction for depreciation, but not to exceed its replacement or repair costs. Here the only proof presented regarding damages was by Fryers' accountant, who, because of total destruction of the inventory and furniture involved, had to reconstruct the actual cash value of the property lost. He did so using standard, acceptable accounting practices and determined the cost of the destroyed personal property immediately prior to the fire was $88,-305.79 and that its salvage value immediately after the fire was $1,000.00, making a difference of $87,305.79, the amount of the jury's verdict. Since no proof was presented as to depreciation, or replacement or repair costs, there can be no complaint about these factors not being considered. The instruction given, even though stating the tortious measure of damages, also properly presented the issue posed by the policy terms of "actual cash value" in view of the nature of the proof presented. Consequently, for this reason also there was no prejudicial error.

The issue of error of which American Hardware complains resulting from the trial court's dismissing its counterclaim against the Fryers based on their culpability in causing the fire was rendered moot by

the jury's failure to find against them on that issue.

 The fourth and only remaining issue, that the trial court erred in not granting its motion for change of venue because it would be denied a fair trial because of the fact that the Sheriff of Hart County was implicated in the state police investigation of the events in question, was and is so baseless, both in fact and law, and is so completely without merit, that it is deserving of no additional comment.

The Judgment of the Hart Circuit Court is AFFIRMED.

All concur.