KENTUCKY ASSOCIATION
OF REALTORS, INC.,
Appellant,

v.

Chester W. MUSSELMAN; Wallace G. Wilkinson, Governor of the Commonwealth of Kentucky; and Kentucky Real Estate Commission, Appellees.

Frederic J. COWAN, Attorney General
of the Commonwealth of
Kentucky, Appellant,

v.

Chester W. MUSSELMAN and Kentucky Real Estate Commission, Appellees.

Nos. 90–SC–664–TG, 90–SC–665–TG.

Supreme Court of Kentucky.

Aug. 29, 1991.

Rehearing Denied Nov. 21, 1991.

Fred E. Fugazzi, Jr., W. Terry McBrayer, Lexington, for Kentucky Assoc. of Realtors.

Peter L. Ostermiller, Robert G. Stallings, Louisville, for Musselman.

Kevin J. Hable, William H. Hollander, Sheryl G. Snyder, Louisville, for Wilkinson.

T. Kennedy Helm, III, Judith A. Villines, Frankfort, for amicus curiae.

John L. Ackman, Jr., Louisville, for Kentucky Real Estate.

Frederic J. Cowan, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, Kelly Mark Easton, Louisville, for Cowan.

LEIBSON, Justice.

This is a declaratory judgment action filed by the appellee, Chester W. Musselman, a licensed real estate agent, against:

(1) The Kentucky Association of Realtors, Inc. (the "Association"), a private, vol-

untary non-profit organization of professional real estate agents;

(2) The Kentucky Real Estate Commission (the "Commission"), a state agency charged with the responsibility of licensing and regulating Kentucky real estate brokers and salesmen;

(3) The Governor of Kentucky; and

(4) The Attorney General of Kentucky.

The appellee seeks to have a portion of KRS 324.281 declared unconstitutional. The statute provides the statutory structure for the Real Estate Commission, and specifically limits the Governor's power of appointment of real estate agents to serve as members of the Commission to a list supplied by the Association. The Complaint alleges "there are approximately 24,000 real estate licensees in the Commonwealth of Kentucky, of which approximately one-third are members of the KAR [the Association]," that the statute is arbitrary and in violation of Section 2 of the Kentucky Constitution, and that it violates the separation of powers principle in Sections 27 and 28 of the Kentucky Constitution, thus also infringing on Section 69, which vests the "supreme executive power of the Commonwealth" in the Governor.

Based on these enumerated sections of the Kentucky Constitution, the trial court entered Judgment on the Pleadings declaring unconstitutional so much of KRS 324.281 as requires the Governor to appoint from the list supplied by the Association. The Association and the Attorney General appealed separately from the trial court's final judgment. On its own motion the Kentucky Court of Appeals recommended transfer to the Kentucky Supreme Court because the "decision on this matter has the potential to affect a large variety of regulatory administrative agencies and will have statewide implications for many regulated groups."[1] We have granted transfer, and for reasons that follow we hold the statute in question does not violate the sections of the Kentucky Constitution in

question. Thus we reverse the trial court's decision.

The portion of the statute in question, KRS 324.281(3), provides:

"For each appointment or vacancy, the Kentucky Association of Realtors shall supply a list of not less than three (3) names of licensees to the governor each year from which the broker or sales associate appointments are to be made. The governor may fill vacancies arising in the middle of the year from those remaining on the list or from a new list supplied by the association."

The statute limits the power of the Governor to appoint two names on a list provided by the Association, but it neither limits appointees to members of the Association nor does it compel the Governor to appoint someone on the list. Strictly speaking, the Association may nominate any licensed real estate agent who meets the qualifications in Subsection (1) of KRS 324.281, without regard to membership in the Association, and the Governor may reject all the names on the list provided by the Association and forego making an appointment until provided with a list that includes a person whom the Governor deems suitable for appointment to the office.

The Commission consists of five persons, four of whom are selected in this manner, and a fifth who "shall be a citizen at large who is not associated with or financially interested in the practice or business regulated." KRS 324.281(1). No governmental or regulatory authority is delegated to the Association unless the power to "supply a list" as specified in KRS 324.281(3), quoted above, should be classified as a grant of such power. We have not been presented with any valid reason why it should be so construed.

We acknowledge that Sections 27 and 28 of the Kentucky Constitution require strict adherence to the doctrine of separation of power. Our Kentucky Constitution not only divides the "powers of the government ... into three distinct departments

---

1. One of those groups, the Kentucky Society of CPAs, by leave of court, has filed an Amicus Curiae Brief herein.

["legislative," "executive" and "judicial"], "each ... confined to a separate body of magistracy (Section 27)," but adds to this another proviso expressly forbidding "persons, being of one of those departments" the "exercise of any power properly belonging to either of the others (Section 28)."

The appellee concedes the creation of a regulatory commission such as the one in question is a proper exercise of legislative power. So is the designation of qualifications or criteria for persons who shall serve on such a Commission, so long as such qualifications or criteria are not impermissibly "arbitrary" within the context of Ky. Const. Section 2. The primary question in this case is whether the General Assembly has encroached upon the exclusive power of the executive by delegating to the Association responsibility to "supply a list" from which the Governor shall choose his appointee. The almost identical question was first addressed by this Court in *Elrod v. Willis*, 305 Ky. 225, 203 S.W.2d 18 (1947), which now has been the controlling precedent on this point for almost 45 years.

In *Elrod* we held constitutional a section of the statute creating the Kentucky Disabled Ex–Servicemen's Board, a state agency with "full executive powers" to administer a claims program for disabled veterans, which specified that "all appointments to the Board shall be made by the Governor from a list of five (5) names ... submitted by" the Kentucky branch of the American Legion. The Legion was, and is, a private, voluntary organization, in the same sense as is the Kentucky Real Estate Association in the present case, and the function designated to it by statute was substantially identical to the same function provided for by KRS 324.281(3), with which we are now concerned. Now no less than twelve other state regulatory Boards and agencies utilize a similar method in an effort to insure the appointment of qualified individuals.[2] Thus a large body of statutory law has developed since 1947 in reliance on *Elrod v. Willis*. Although we would not hesitate in overruling a longstanding precedent if presented with compelling and specific reasons why such precedent is clearly erroneous despite the unsettling nature of such a decision, no such specific and compelling reasons for overruling *Elrod* have been presented here. On the contrary, the appellee's argument against the *Elrod* case is limited to appellee's claim that *Elrod* has lost its vitality because of our decision in *Legislative Research Com'n. (LRC) v. Brown*, Ky., 664 S.W.2d 907 (1984). The appellee argues that, while *Elrod v. Willis* was not overruled in *LRC v. Brown*, it did not survive it. But there are sharp factual differences, which we will later address, between the statutory structure declared unconstitutional in *LRC v. Brown* and the structure validated in *Elrod v. Willis*.

In analyzing the function delegated by statute to the American Legion in *Elrod*, we stated "the legislature has not attempted to appoint administrative officers, nor has it completely denied the appointive function of the executive." 203 S.W.2d at 20. It has "simply limited the Governor's selection to a list of men named by an organization which is not affected by the limitation of Section 27." *Id.* Utilizing a private, voluntary organization of this nature is "a recognition that organizations whose objectives coincide with the objectives of the law creating the agency, may render a material service to the Governor by nominating men to staff that agency who are qualified by interest, experience, and background." *Id.*

Almost contemporaneously with the decision in *Elrod v. Willis*, our Court also decided *Fraysure v. Ky. Unemployment Comp. Com'n.*, 305 Ky. 164, 202 S.W.2d 377 (1947), a suit to test the constitutionality of the statute structuring the newly created Kentucky Unemployment Compensation Commission. The statute in question provided for:

---

**2.** KRS 325.230(1)—Accountancy; KRS 330.-050(2)—Auctioneers; KRS 316.180(1)—Embalmers and Funeral Directors; KRS 311.530—Medical Licensure; KRS 314.121(1)—Nursing; KRS 320.230(1)—Optometric Examiners; KRS 217B.505(2)—Pest Control; KRS 315.150(2)—Pharmacy; KRS 327.030—Physical Therapy; KRS 311.410(1)—Podiatry; KRS 165A.340—Proprietary Education; KRS 319.020(2)—Examiners of Psychology.

"... an Employment Service Commission composed of a Director of Employment Service and two members, one representing labor and the other management, to be appointed by the Commissioner of Industrial Relations, with the approval of the Governor, from lists of names submitted to him by representatives of labor and management." 202 S.W.2d at 379. It also provided certain criteria or qualifications for the Director, including "at least four years' full time paid experience in the administration and supervision of a statewide system of public employment service offices," 202 S.W.2d at 380, which substantially narrowed the Governor's choice for this position.

Discussing first the constitutionality of the limitations on the Governor's appointive powers imposed by the statutory qualifications for the office, we said "it is only where the classifications are arbitrary and unreasonable, so as to exclude one or more of a class without a reasonable basis, that the Act is void." 202 S.W.2d at 381.

Next, with reference to restricting appointment of Commission members to "list of names submitted ... by representatives of labor and management," we stated:

"Nor is it unusual in this jurisdiction for the Governor to be required to make appointments from lists submitted to him. It is provided in KRS 116.010 that the Governor shall appoint two members of the State Board of Elections Commissioners from a list of names if submitted to him by each major political party." Id.

■ As we stated earlier in this Opinion, the question before us is the impact on cases such as *Elrod v. Willis* and *Fraysure v. Ky. Unemployment Comp. Com'n.*, of our more recent landmark constitutional law decision on the subject of separation of powers doctrine in *LRC v. Brown, supra.* *LRC v. Brown* "address[ed] the constitutionality of several Acts of the Kentucky General Assembly passed by that body's 1982 regular session," including statutes which "empower[ed] the Speaker of the House of Representatives and the President Pro Tem of the Senate to appoint one or more members of particular Boards," statutes making these two legislative officials "ex officio members of certain existing Boards and Commissions," statutes "conferr[ing] on the LRC or a joint interim legislative committee the power to advise and consent on the Governor's appointment to Boards or Commissions," statutes "direct[ing] the Governor to make appointments solely from a list submitted to him by the LRC", and statutes "permitt[ing] the LRC or its Chairman to make appointments to certain Boards and Commissions." 664 S.W.2d at 920. We held these statutes constitutionally impermissible under the separation of powers doctrine, quoting from *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922):

"Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does our Constitution,...." 664 S.W.2d at 913.

We "conclude that any statute subject to the scrutiny of Sections 27–28 of the Kentucky Constitution should be judged by a strict construction of those time-tested provisions." 664 S.W.2d at 914.

*We do not now retreat from our decision in LRC v. Brown one iota.* Nevertheless, there is a fundamental and critical difference between the statutes held constitutionally flawed in *LRC v. Brown* and the statutes proved as constitutionally valid in *Elrod v. Willis* and *Fraysure v. Ky. Unemployment Comp. Com'n.* The statutes in *LRC v. Brown* granted the General Assembly continuing power, either directly through its leadership or indirectly through the LRC (which we recognized was *not* an independent agency but an arm of the legislature), to require the Governor to appoint to specified commissions persons who were nominees of the legislature. This transgressed the mandate in Section 27 of our Kentucky Constitution that "each" department of government shall "be confined to a separate body of magistracy," and in Sec. 28 that "[n]o ... persons, being of one

of those departments, shall exercise any power properly belonging to either of the others." But the statute presently in question, as in the *Elrod* and *Fraysure* cases, gives the General Assembly no voice in the selection of committee members; its reach extends solely to providing a method of selection with reasonable criteria to generate commission members qualified for the position through participation of an organization, the Kentucky Association of Realtors, which is independent of legislative control.

 Conceivably, there are circumstances in which designating an organization by statute to participate in the nominating process could raise questions regarding the exercise of "arbitrary power" under Ky.Const. Section 2, or perhaps of unauthorized grant of "separate public ... privileges" under Ky.Const. Section 3. But this would be only if there was some substantial, demonstrable defect in the organization selected exposing the legislative choice as unreasonable and inappropriate for obtaining a valid legislative objective. There is nothing in the present fact situation suggesting a case for unconstitutionality on such grounds.

Therefore, for the reasons stated herein, we reverse and vacate the judgment of the trial court and remand the case with directions to enter a new judgment upholding the constitutionality of the statute and dismissing the Complaint.

STEPHENS, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

LAMBERT, J., dissents by separate opinion in which COMBS, J., joins.

LAMBERT, Justice, dissenting.

In my view, the statute under consideration is in clear violation of Sections 27, 28 and 69 of the Constitution of Kentucky. Despite the valiant attempt of the majority to say otherwise, the Legislature has in effect appropriated executive prerogative by conferring upon a trade association the arbitrary power, in violation of Sections 2 and 3 of our Constitution, to limit the pool of persons from which the governor may make his appointment. While it may be unimportant for purposes of constitutional analysis, it should not go unnoticed that only approximately one-third of Kentucky's licensed real estate agents are members of the trade association to which the Legislature has granted such power.

In defense of its position, the majority observes that the association has a right to include on its list of possible appointees persons who are not its members, and it is noted that the governor would be entitled to refrain from making any appointment until the list submitted included the names of persons whom he believed to be suitable. While such facts may provide enough breathing space to prevent a stalemate, if a test of wills should develop between the executive and the association, the executive would have to yield or have his power of appointment thwarted. As the governor can appoint only from the list submitted, the entity which controls the list controls who shall be appointed.

This Court's landmark decision in *Legislative Research Commission (LRC) v. Brown*, Ky., 664 S.W.2d 907 (1984), is believed by many to have inaugurated a new era in the interpretation of Sections 27 and 28 of our Constitution. To borrow a popular phrase, a line was drawn in the sand when we refused to adopt a "liberal construction of the separation of powers doctrine" and stated that such an interpretation would be tantamount to repealing sections 27 and 28. The concept of encroachment by one branch of government upon the functions of another was viewed as contrary to the foundation of our constitutional government in that it would ultimately result in one branch vastly exceeding the rightful power allocated to it. We quoted with approval from *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922) as follows:

"[T]he Legislature may perform all legislative acts not expressly or by necessary implication withheld from it, but it may not perform or undertake to perform executive or judicial acts...."

It cannot be disputed that the appointment of officials is inherently an executive

act. *LRC v. Brown,* at 920–924. As such and in view of the importance we have ascribed to the principle involved, we should not countenance an evasion or circumvention of the rule established.

The majority has emphatically declared, *"We do not now retreat from our decision in LRC v. Brown one iota."* Despite such protestation, there is a great similarity between the statutes held unconstitutional in *LRC v. Brown* and the statute upheld in this case. The majority attempts to distinguish this case from *LRC v. Brown* on the grounds that "the General Assembly [has] no voice in the selection of committee members; its reach extends solely to providing a method of selection . . . which is independent of legislative control." Said otherwise, the majority has the view that the General Assembly may, by delegation of authority to a trade association, do what it cannot do directly. Such a distinction is without a difference.

We should take the opportunity provided by this case to reiterate the requirement of Section 27 that each branch of government should be "confined to a separate body of magistracy" and the requirement of Section 28 that no branch of government should "exercise *any* power properly belonging to either of the others." (Emphasis added.)

COMBS, J., joins in this dissent.