David L. KRAUS, Appellant,

v.

The KENTUCKY STATE SENATE, the Kentucky House of Representatives Workers' Compensation Board, Appellees.

No. 92–SC–960–DG.

Supreme Court of Kentucky.

Nov. 24, 1993.

As Modified on Grant of Rehearing
March 24, 1994.*

* All concur except STUMBO, J., not sitting.

Fred R. Radolovich (David L. Kraus, of counsel), Louisville, for appellant.

Chris Gorman, Atty. Gen., Thomas J. Hellmann, Asst. Atty. Gen., Frankfort, L.T. Grant, Com'r, Valerie L. Salven, Gen. Counsel, Dept. of Workers' Claims, Frankfort, for appellees.

WINTERSHEIMER, Justice.

David L. Kraus challenges the authority of the Kentucky State Senate to grant to itself the power to consent to the employment by an executive board of the Workers' Compensation Commission of an Administrative Law Judge pursuant to K.R.S. 342.230(3). This appeal is from a decision of the Court of Appeals which affirmed the circuit court or-

der sustaining the constitutionality of the statute and denying Kraus damages and injunctive relief. The circuit court determined that the statute was constitutional and that the Senate and the Workers' Compensation Board are immune from suit for injunctive relief in this matter.

The specific questions raised are whether the circuit court erred or misinterpreted *Legislative Research Com'n v. Brown*, Ky., 664 S.W.2d 907 (1984) when it found the statute constitutional and whether the Court of Appeals was in error when it held that immunity was a bar to suing the Senate and the Workers' Compensation Board for injunctive relief or damages.

Kentucky Workers' Compensation laws were amended in 1987 to establish a system in which ten Administrative Law Judge positions were created. In 1990, the statute was further amended to increase the number of ALJ positions to fifteen. These positions were to be filled by the Workers' Compensation Board subject to the approval of the Kentucky State Senate. K.R.S. 342.230(3).

Kraus was contacted by the Chairman of the Workers' Compensation Board and advised of his selection as one of the five ALJs to be appointed pursuant to the 1990 enlargement. He was told that his appointment was subject to senate approval but that he should be ready to begin work on May 1, 1990. In April, he appeared before the Senate but his nomination was rejected. He filed a declaration of rights action seeking to have the statute declared unconstitutional and requesting damages and "reinstatement" to the ALJ position. Named as parties to the suit were the Kentucky State Senate and the Kentucky House of Representatives, the Department of Labor and the Workers' Compensation Board. The Department of Labor was dismissed by agreed order. Kraus specified that all defendants were sued in their official, and not in their individual, capacities. The circuit court ruled by a judgment on the pleadings that the statute was constitutional and that both the state and federal civil rights claims were barred by the immunity provided by the speech and debate clause of Kentucky Constitution Section 43 and U.S. Constitution, Article I, Section 6. The circuit

court further determined that Kraus had only an expectancy of employment and not a right.

The complaint in circuit court contends that the statute is unconstitutional by virtue of being in violation of Sections 27, 28, 29 and 69 of the Kentucky Constitution.

The Kentucky Court of Appeals reversed the circuit court on two issues when it determined that Kraus had standing to bring the action challenging the constitutionality of the statute and that the complaint presented a justiciable controversy. This Court granted Kraus's motion for discretionary review of the Court of Appeals decisions that the statute is constitutional and that the Kentucky State Senate and House of Representatives are immune from suit. It should be noted that the House is not involved in the confirmation process.

Initially, we will consider Kraus's argument that the Senate does not have the authority to consent to executive branch appointments and that to permit such consent would be a violation of the separation of powers provision of the Kentucky Constitution.

The seminal case which considers the separation of powers doctrine under the Kentucky Constitution is *Legislative Research Com'n v. Brown, supra.* Two of the issues addressed by the court in *Brown, supra,* were the power of the LRC to act in the place of the General Assembly after it had adjourned, and the authority of the LRC and the legislative leadership to appoint members to serve on various boards and commissions. *LRC v. Brown,* held that a statute making the Legislative Research Commission an independent agency with powers to legislate while the General Assembly was adjourned was unconstitutional as being in violation of the separation of powers provision of the Kentucky Constitution. *Brown* also held that the legislature could not constitutionally appoint inferior state officers.

An important distinction must be made immediately, and that is that there is a difference between the power to appoint and the power to confirm or reject an appointment by another branch of government.

Clearly this is a rather mixed situation involving the three principal functions of government. An ALJ performs certain judicial functions insofar as he or she may take evidence, hold hearings and render final opinions in a worker's compensation matter subject to further appeal both to the Workers' Compensation Board and the established judicial system. The appointments are made by the executive branch, and pursuant to statute are subject to legislative confirmation.

In *Brown*, this Court held invalid a number of statutes which delegated to the LRC the legislature's role of advice and consent on executive appointments. *See Brown* at 924. Brown left intact the power of the legislature itself to consent to the executive appointments where properly provided by appropriate statute.

We recognize that unlike the Federal Constitution, the Kentucky State Constitution contains express separation of powers provisions. *Brown;* Sheryl G. Snyder and Robert M. Ireland, *The Separation of Governmental Powers Under the Constitution of Kentucky: A Legal and Historical Analysis of LRC v. Brown*, 73 Ky.Law Journal 165 (1984–85).

The provisions of constitutional sections 27 and 28 divide the governmental power into three branches, executive, legislature and judicial, and provide that no person in one branch shall exercise power belonging to another branch.

Kraus contends that K.R.S. 342.230(3) is unconstitutional because the Senate has granted unto itself the power of filling or withholding appointments in contravention of authority of the executive branch. *See* Const. § 76; *Pratt v. Breckinridge*, 112 Ky. 1, 65 S.W. 136 (1901). We must also understand that *LRC v. Brown* determined that any statute which purportedly contravenes Sections 27 and 28 of the Kentucky Constitution must be strictly construed. *Brown, supra.*

The question of appointment is not before this Court because the Senate does not appoint an ALJ under the statute but only consents to the appointment by the Workers' Compensation Board.

The important distinction between the power to appoint and the power to consent to an appointment has been recognized previously in *Sewell v. Bennett*, 187 Ky. 626, 220 S.W. 517 (1920). In that case, the highest court of this state considered whether the provisions of the Workers' Compensation Act allowing the Governor to appoint members of the Workers' Compensation Board were in conflict with K.S. 3750 which gave the Senate the power to confirm executive appointments. This Court held that the section in question did not in any manner interfere with the power of the Governor to appoint. "It merely provides that, when he does appoint, his appointment shall be subject to the approval of the senate."

The court in *Sewell, supra*, acknowledged the constitutionality of the legislation of K.S. 3750 because the court stated that this section would be applied by the court only "when there is nothing in the constitution ... in conflict with the provisions of this statute." *Sewell*, 220 S.W. at 520. The decision in *Sewell* did not involve the question of whether the legislature had the power to make such appointments because the specific legislation conferred that power on the governor. The only issue in *Sewell* was whether the power of appointment was subject to a provision requiring advice and consent by the Senate. Similarly, in *Kentucky Ass'n of Realtors v. Musselman*, Ky., 817 S.W.2d 213 (1991), a statute required a private body to submit a list of nominees to the governor who then was to make an appointment from that list. This was found by the court to not violate Sections 27 and 28 because the statute:

> Gives the General Assembly no voice in the selection of committee members; its reach extends solely to providing a method of selection with reasonable criteria to generate commission members qualified for the position....

*Brown* did not overrule *Sewell* and recognized the distinction between the power to appoint and the power to consent. This Court in *Brown* did not dispute that the legislature had the power to advise and consent but not through their agent, the LRC, while the General Assembly was in recess.

In order to determine that the General Assembly had improperly delegated its authority, the court must have had to first recognize that the legislature had such power.

The delegates to the 1890 Constitutional Convention and the Kentucky Constitution itself acknowledge the authority of the Senate to consent to certain appointments by the executive branch. Section 209 of the Constitution provides that the Governor was given power to appoint the first three members of the railroad commission with the advice and consent of the Senate. Kraus claims that the Senate does not have authority to advise and consent because the constitutional convention amended and deleted specific mandatory "advice and consent" language from Section 76 of the Constitution. The delegates to the convention understood that the mandatory provisions in Section 76 which would have required the Senate to consent had to be changed into the general terms which permitted Senate consent to any inferior state official that the General Assembly determined by legislative enactment should be subject to such senate consent.

Since the enactment of the 1891 Constitution, the General Assembly has understood that the Senate had the constitutional authority to consent to the appointment of inferior state officers. K.R.S. 3750 was enacted in 1893 and provided in part:

> Unless otherwise provided, all persons appointed to an office by the Governor, whether to fill a vacancy, or as an original appointment, shall hold office subject to the advice and consent of the Senate, which body shall take appropriate action upon such appointments at its first session held thereafter.

*Sewell*, 220 S.W. at 519.

This section was repealed and amended, but reenacted without change in 1934. *See Johnson v. Laffoon*, 257 Ky. 156, 77 S.W.2d 345 (1935). Although K.R.S. 3750 has been amended over the years, its essential component, which is the recognition of the constitutional authority of the Senate to advise and consent on certain appointments, has never been changed and remains in effect today as K.R.S. 63.080, which states in part, "Any person appointed by the Governor, either with or without the advice and consent of the Senate, may be removed from office by the Governor...."

Pursuant to Constitution § 93, K.R.S. 342.-230(3) was enacted as were ten other statutes which provide for executive appointments subject to Senate and/or House approval. The other statutes are K.R.S. 18A.050(4), State Personnel Board; K.R.S. 27A.050, Director of the Administrative Office of the Courts; K.R.S. 121.110(1), Registry of Election Finance; K.R.S. 131.315(1), Board of Tax Appeals; K.R.S. 154A.030(1), Lottery Board of Directors; K.R.S. 156.029(1), Elementary and Secondary Education Board; K.R.S. 156.665(2), Council for Educational Technology; and K.R.S. 278.050(1), Public Service Commission.

There are also statutory procedures for Senate confirmation of gubernatorial appointments. K.R.S. 11.160. Clearly, for more than the last one hundred years, the independent branches of government have recognized that the General Assembly has authority to confirm nominations from other branches of government.

In addition, this Court has historically acknowledged that the Senate has the power to consent to the appointment of inferior state officers. *Sewell*, 220 S.W. at 522 notes that the Governor routinely sent appointments to various offices to the Senate for its consent when the legislation creating an office contains such a requirement. Prior to *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455 (1922), no party challenging the application of Section 3750 ever asserted that the statute was unconstitutional. In the *Sibert, supra* case, the issue was limited to whether the General Assembly had the power to appoint state officers pursuant to Section 93 of the Constitution. Following *Sibert*, there are several reported cases challenging the validity of appointments made with the advice and consent of the Senate, but no case involving a challenge to the constitutional authority to confirm such nominations or appointments. The parties and the courts recognized that such power was indeed constitutional. *See Johnson v. Laffoon, supra; Johnson v. Sampson*, 232 Ky. 648, 24 S.W.2d 306 (1930); *Bell v.*

*Sampson*, 232 Ky. 376, 23 S.W.2d 575 (1930); *McChesney v. Sampson*, 232 Ky. 395, 23 S.W.2d 584 (1930).

■ Statutes enacted contemporaneously with the ratification of the Kentucky Constitution of 1891, and much of the case law interpreting those early statutes, supports the conclusion that the Senate has the inherent power to advise and consent on executive branch appointments of inferior state officers. The legislature, the executive and the courts have acquiesced in such a construction.

> Legislative or executive construction of constitutional provisions adopted and acted on with the acquiescence of the people for many years is entitled to great weight with the courts and where not manifestly erroneous, it will not be disturbed. The injustice that would inevitably result by the disturbing of such constructions after a long period of acquiescence therein during which many rights will necessarily have been acquired, is a very strong argument against it.

*Coleman v. Mulligan*, 234 Ky. 691, 28 S.W.2d 980 (1930), citing 12 C.J. 714–715.

It is true that Section 76 of the Kentucky Constitution was changed in 1890 to delete that portion granting the Senate authority to advise and consent to executive appointments. However, the change was made in order to eliminate any possible conflict with what was to become Section 93 of the same constitution. Section 76 had provided that any nonelective officers shall be appointed by the Governor with the advice and consent of the Senate. Section 93 provided that "Inferior state officers, not specifically provided for in the constitution, may be appointed or elected in such manner as may be presented by law...." Section 76 had been included in the Kentucky Constitution of 1890 only to permit the Governor to appoint the state librarian. *See Snyder, supra,* 73 Ky.Law Journal at 173–74, note n. 59.

■ The statute in question does not permit the Senate to make appointments of administrative law judges but only to accept or reject the decision of the Workers' Compensation Board. We can determine that the statute does not violate any constitutional provisions and that the circuit court did not err in concluding that the statute is constitutional.

■ There is a strong presumption of constitutionality which is afforded any enactment of the General Assembly. *Jefferson Co. Police Merit Bd. v. Bilyeu,* Ky., 634 S.W.2d 414 (1982).

■ Although K.R.S. 342.230(2) authorizes the Workers' Compensation Board to "employ a commissioner," K.R.S. 342.230(3) on the other hand notes that the Board must employ Administrative Law Judges with the consent of the Senate. Kraus did not obtain the consent of the Senate and he failed to overcome the second statutory section required for him to be "employed" by the Board as an Administrative Law Judge. Consequently, Kraus has not stated a good cause of action against the Board.

Kraus waived his opportunity to challenge the authority of the Senate to vote on his employment by appearing at the confirmation hearing without protest and engaging in the confirmation process. If he had wished to challenge the authority of the Senate to vote at all, such a challenge should have been made before he was damaged. He might have sought an injunction against the Senate to prevent it from holding the confirmation hearings, or he could have appeared under protest, making his question concerning the statute known at that time. He did not appear at the hearing under protest, he willingly appeared and participated. In a supplemental memorandum filed with the circuit court on April 10, 1991, Kraus said he was faced with a "Hobson's choice" and that he decided to appear, be damaged, and challenge the statute. We are unconvinced.

■ Here, Kraus did not begin any employment. He was not entitled to the payment of a salary because he never rendered any service to the state. No emolument or privileges shall be made to anyone except in consideration of public service. Ky. Const. § 3; K.R.S. 64.410. The right to object to a defect in a contract may be waived. *Weil v. B.E. Buffaloe & Co.,* 251 Ky. 673, 65 S.W.2d 704 (1933). *Cf. American Hardware Mutual*

*Ins. Co. v. Fryer*, Ky.App., 692 S.W.2d 278 (1985).

■ Kraus, when recommended to the Senate, had an expectancy of employment, but not a vested right to it. *HealthAmerica Corp. v. Humana Health Plan*, Ky., 697 S.W.2d 946 (1985); *Winn v. First Bank of Irvington*, Ky.App. 581 S.W.2d 21 (1978).

Here the nominee has acquiesced in the nomination and confirmation process and waived any challenge by failing to protest until after the Senate vote had been taken.

■ In passing, it should be noted that the Workers' Compensation Board is restricted by K.R.S. 342.230(3) to employing not more than 15 ALJs. The addition of Kraus to the current roster would raise the number to 16 in clear contravention of K.R.S. 342.230(3). Prospective injunctive relief making Kraus an ALJ is not appropriate.

■ It should also be noted that Kraus has not stated a cause of action against the Board concerning his tort and civil rights claims. He has always maintained that this action is brought against the Senate and the Board in their official capacities and not as individuals.

### Standing to Sue

We must now address the question of Kraus's standing to file suit in this type of matter. The circuit court ruled that he had only a mere expectancy of employment and no right to employment at the time of his rejection by the Senate, and thus he had no standing to sue.

■ We believe that standing to sue means that a party has a sufficient legal interest in an otherwise justiciable controversy to obtain some judicial decision in the controversy. As noted by the Court of Appeals, it is the right to take the initial step that frames legal issues for ultimate adjudication. 59 Am.Jur.2d *Parties* § 30–33 (1987).

*Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186 (1989), held that local school boards had standing to sue the Governor and other constitutional state officers and the Speaker of the House of Representatives and the President pro tem of the Senate in order to enforce the constitutional mandate for an efficient system of common schools throughout the state. Standing to sue turns not on just the mere expectancy of employment but on the right to challenge a constitutional question.

■ K.R.S. 418.045 provides that any person whose rights are affected by statute or who is concerned with any title to office may apply for and secure a declaration of rights provided that an actual controversy exists with respect thereto. In the absence of the requirement of senate confirmation, Kraus would have been secure in his employment. *Cf. Akers v. Floyd Co. Fiscal Court*, Ky., 556 S.W.2d 146 (1977). The Kraus complaint rises to at least an expectation of employment and he was the type of person directly affected by the enforcement of K.R.S. 342.230(3). We believe it was error to dismiss the case based on a lack of standing. This is a dramatically different factual situation from that involved in *Winn v. First Bank of Irvington, supra.*

■ In addition, Kraus presented a justiciable controversy and not simply a theoretical legal question. The result was more than a mere advisory opinion. Clearly the courts are not involved in deciding purely hypothetical questions. *Commonwealth v. Crow*, 263 Ky. 322, 92 S.W.2d 330 (1936). Here Kraus had a real interest in being appointed to the ALJ position and we believe that a true controversy existed.

*Philpot v. Patton*, Ky., 837 S.W.2d 491 (1992) provides in part that "a controversy is nonjusticiable because the Senate is immune from suit or because members of the General Assembly are immune from suit in their official capacity ... or that either body has acted or failed to act in a constitutional manner." The decision of this Court in *Rose v. Council for Better Education, supra*, held that the General Assembly is not immune from suit in a declaratory judgment action to decide whether the General Assembly has failed to carry out a constitutional mandate and that members of the General Assembly are not immune from declaratory judgment relief simply because they are acting in their official capacities.

Finally, we must consider the argument by Kraus that the circuit judge erred in dismissing his claim based on tort and Federal and State Civil Rights actions. The Senate contends that Section 43 of the Kentucky Constitution provides legislative immunity from suits whether it be in tort, Federal or State Civil Rights actions. Section 43 states that members of the General Assembly shall be privileged concerning "any speech or debate in either house, they shall not be questioned in any other place."

The Federal Constitution states a similar provision in Article I Section 6. Such immunity provided by the "Speech or Debate Clause" applies not only to speech and debate, but also to voting, reporting and every official act in the execution of legislative duties while in session. *Wiggins v. Stuart*, Ky.App., 671 S.W.2d 262 (1984), citing *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Such a clause is to be liberally construed. 72 Am. Jur.2d *States, Territories and Dependencies* § 55 (1974). Accordingly, we believe that such legislative immunity extends to the voting on executive appointments and that members of the Kentucky Senate cannot be sued for damages on the basis of their vote to confirm or reject such an appointee sent to them for confirmation.

Consequently, we do not reach the issues concerning the various claims for relief which Kraus asserted against members of the Senate. Members of the Workers' Compensation Board do not have legislative immunity from suit although 42 U.S.C. § 1983 protects the Board from a Federal Civil Rights claim for money damages. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), held that neither a state, nor its officials acting in official capacities, are persons under Section 1983. Therefore, they are not proper parties in a suit for money damages. *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), held that state officials could be answerable as persons within the context of Section 1983 if sued in their individual capacities. Kraus has consistently claimed that his suit has been against the Board, and not against individual members of the Board. In view of the fact that the circuit court and the Court of Appeals have rejected the challenge by Kraus to the constitutionality of the procedure, no relief from the Board is possible. There was no error in dismissing his claim for injunctive relief.

In summary, it is the holding of this Court that Kraus is not entitled to monetary damages against the Board or any individual member of the Board. We further hold that this action may not be maintained against the Senate because the legislature is immune from suit for damages under Section 43 of the Kentucky Constitution and Federal case law. In addition, we hold that the procedure for advice and consent of K.R.S. 342.230(3) is constitutional. There is no violation of the separation of powers doctrine because the power to consent does not amount to the authority to appoint.

The decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and LEIBSON, REYNOLDS and SPAIN, JJ., concur.

LAMBERT, J., dissents by separate opinion in which COMBS, J., joins.

LAMBERT, Justice, dissenting.

The majority has acknowledged that Section 76 of the Constitution of Kentucky was modified in 1890 and the advice and consent provision of the earlier constitution removed therefrom. The majority suggests that this was to eliminate any conflict with Section 93 which provides that inferior state officers "may be appointed or elected, in such manner as may be prescribed by law...."[1] This is a leap of logic which is unsustainable. It is inconceivable that the delegates to the Constitutional Convention could have intended to maintain the practice of Senate advice and consent while eliminating from the Constitution the very provision which expressly conferred such authority. To suggest that the

---

1. Since enactment of the statute at issue here, the Constitution of Kentucky, Section 93, was amended to expressly provide for Senate consent to the appointment of certain inferior state officers and members of boards and commissions. The amendment has no application here.

delegates intended advice and consent to be authorized by the vague language which appears in Section 93 is sophistry.

Among the most significant decisions in Kentucky constitutional law is *Legislative Research Commission v. Brown*, Ky., 664 S.W.2d 907 (1984), in which this Court undertook to rigidly enforce Sections 27 and 28 of the Kentucky Constitution, the separation of powers provision.

> We should not abandon the philosophical principles that were incorporated by the framers of our present constitution. The purpose of the separation of powers doctrine is uncontroverted. The precedents established by this court have been uniform in retaining the goals set out by the framers. The separation of powers doctrine is set in the concrete of history and legal precedent. We will not overrule those cases and we will not, by the fiat of judicial legislation, change the clear and imperative meaning of our constitution. Such action is within the sole province of the voters of this Commonwealth.

> We conclude that any statute subject to the scrutiny of Sections 27–28 of the Kentucky Constitution should be judged by a strict construction of those time-tested provisions.

*Id.*, at 914.

This case and our recent decision in *Kentucky Association of Realtors v. Musselman*, Ky., 817 S.W.2d 213 (1991), amounts to a major retreat from the foregoing principles and authorizes another significant legislative incursion into executive domain. I dissented in *Musselman* and for the reasons explained therein, I dissent in this case. The wall of separation between the branches of government declared by Sections 27 and 28 is being dismantled and the determination expressed in *LRC v. Brown* is being ignored.

COMBS, J., joins in this dissenting opinion.